PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1209
_____

BERNARD LAMBERT,
                                        Appellant

v.

WARDEN GREENE SCI


_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-01339)
District Judge: Honorable C. Darnell Jones, II
_____

Argued: January 18, 2017


Before: AMBRO, VANASKIE, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: June 28, 2017)

Cheryl J. Sturm      (ARGUED)
387 Ring Road
Chadds Ford, PA   19317

        Counsel for Appellant

Catherine B. Kiefer     (ARGUED)
Assistant District Attorney
Susan E. Affronti
Chief, Federal Litigation Unit
Ronald Eisenberg
Deputy District Attorney, Law Division
George D. Mosee, Jr.
First Assistant District Attorney
R. Seth Williams
District Attorney
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

        Counsel for Appellee

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

The Commonwealth of Pennsylvania charged Bernard Lambert as a co-conspirator with and accomplice to Aquil Tillman's acts of murder, aggravated assault, and burglary. Their trial was joint. In preparation for trial, Tillman made statements to a testifying expert that implicated Lambert in Tillman's criminal plan. Recognizing that Tillman (who did

not testify) would not be subject to cross-examination when the expert recounted his statements, the trial judge required counsel to redact facially incriminating references to Lambert from that testimony. However, the expert testified about parts of Tillman's statements that may have become inferentially incriminating in the context of trial.

Lambert asserts that the prosecution used these statements for an impermissible hearsay purpose in its case against him. Our review of the record persuades us that there is some merit to his argument that his Confrontation Clause rights were violated. Because counsel may have been ineffective for failing to cure this potential constitutional violation, we vacate and remand for an evidentiary hearing to determine whether the Commonwealth used Tillman's testimonial statements for their hearsay purpose and, if so, whether trial counsel was ineffective in failing to request a limiting jury instruction.

## I. Background

### A. The trial

In January of 1997 Tillman went to the house in Philadelphia of his former girlfriend, Khadijah Freeman. He entered without permission, broke the lock on her bedroom door, and found her with another man, Shaheed Smith. Tillman and Smith fought each other, and Tillman left.

The next night, Tillman returned to Freeman's house and broke the front door to enter. Freeman's mother, Ann Marie Thomas, demanded that Tillman pay for the broken door and took $300 from his pocket. Tillman and Smith fought a second time, and Tillman left saying he would come back for Smith. Lambert drove Tillman back to Freeman's

3

house 15 minutes later. Lambert waited outside when Tillman reentered.

Inside, Thomas denied having any money of Tillman's, and Tillman shot her in the head, killing her instantly. Tillman then dragged Freeman out to the front porch and shot her by the car, causing serious injuries. Tillman then got in the car, and Lambert drove away from the house.

The Commonwealth prosecuted Lambert and Tillman in a joint jury trial. Tillman was charged with first-degree murder, aggravated assault, burglary, and criminal conspiracy. But for the murder charge being second degree, the same offenses applied to Lambert under the Commonwealth's theory that he was a co-conspirator and accomplice.

The Commonwealth presented no direct evidence of any criminal plan between Lambert and Tillman prior to Tillman's third return to the house. It relied only on their prior friendship (Tillman was a PCP user with a history of mental health problems, and Lambert would give Tillman rides to pick up his psychiatric medications), Lambert's presence, and that Lambert drove Tillman away after witnessing him shoot Freeman.

At trial, Tillman admitted to the crimes, but argued that he lacked specific intent because of his mental illness. Tillman did not take the stand; instead, an expert psychiatrist, Dr. Julie Kessel, testified about the statements Tillman made to her describing what happened to him and how he responded. While the court required the parties to redact a portion of the statements in which Tillman asserted that Lambert gave him a gun, it did not otherwise limit Dr. Kessel's testimony or provide instructions to the jury that the statements could not be used against Lambert.

4

When the prosecution cross-examined Dr. Kessel, she provided the following testimony about how Tillman explained the events that occurred between when he left the house and when he returned with a gun (to repeat, a 15-minute time-frame):

> Prosecutor: All right.  And he [Tillman] used the word "angry."  Those other words that are in your notes, correct?
> Dr. Kessel: Yes, I believe so.
> Prosecutor: It says "very angry," does it not?
> Dr. Kessel: I trust your reading of my record. . . .
> Prosecutor: All right. And he also indicated underneath that he said, damn, you let him beat you up, you got to get him back, you can't let him do that, right?
> Dr. Kessel: I indicated that he is hearing that.
> Prosecutor: Okay.  And that's what he told you, correct?
> Dr. Kessel: Yes.
> Prosecutor: All right.  And he went and he got a gun, right?
> Dr. Kessel: Yes.

J.A. at 617-18.

On redirect, Tillman's counsel asked a clarifying question:

> Counsel: And she asked you whether Mr. Tillman told you that he had to get his money back and he said he had to get his money back and you made mention, I think, of some kind of reference to that's what he was hearing, voices or something of that nature.  Would you elaborate on that? Do you know what I'm talking about?

Dr. Kessel: He was hearing that outside his head. That was not something he was hearing inside of his head from my recollection and the way I've recorded this.

*Id.* at 621.

In her closing arguments, the prosecutor referenced Dr. Kessel's testimony as follows:

And what Dr. O'Brien [an expert witness for the Commonwealth] says is, look, [Tillman] may have problems in his life but I can't state that to a reasonable degree of medical certainty, and that's where I disagreed with Dr. Kessel… [about] how can you have a specific motive to go back and get [your] money and not a specific intent?

*Id.* at 644.

She went on to argue for an inference of a shared criminal plan prior to Tillman's third break-in:

Ladies and gentlemen, look at [Tillman's] actions and I'm telling you right now he could not have done them alone, he needed help, and that's where [Lambert] comes in… We know there is a fifteen-minute window of opportunity from when [Tillman] leaves Freeman]'s house to when he enters [her] house, and that period of time he's got to get the gun and he's got to come back. Well, you know from the diagrams where [she] lives and where [he] lives, he couldn't walk there in fifteen minutes… I submit to you what happened is [Lambert] was there the first time and that [Tillman] was able to use [him], drive away, and drive back because we know there is not enough time for [him] to make a phone call even. You only have fifteen minutes and

6

that fifteen minute period he's got to go, get the gun, and come back and, again, ladies and gentleman, the Judge told you, and you can use reasonable inferences. In other words, use your common sense. They are in the car together. You don't think that they are talking about what just happened at all? It's just quiet? It's nothing?"

*Id.*

The jury convicted Lambert of conspiracy, burglary, and second-degree felony murder. His counsel filed a motion for relief on the ground that evidence of Lambert's presence at the scene was insufficient to establish that he had the requisite foreknowledge of Tillman's criminal intent.

The trial court denied the motion and sentenced Lambert to life imprisonment. In upholding the jury's verdict, the trial court relied on the redacted portion of Tillman's statements—though, of course, it was not in evidence before the jury—in which Tillman alleged that he went to Lambert's home to get a gun before Lambert drove him back to Freeman's house.

## B. Direct Appeal

On appeal, a panel of the Superior Court affirmed the trial court's opinion.[1] The panel also cited to the portion of Tillman's statement not in evidence before the jury (alleging Lambert helped Tillman get the gun) as a basis for affirming the trial court.

The Superior Court reheard the case *en banc*. It recognized the evidentiary error in a footnote, but nonetheless

---

[1] The Superior Courts function as the initial courts of appeal in Pennsylvania.

7

found there was sufficient evidence on the record before the jury to support Lambert's convictions. The Pennsylvania Supreme Court denied allowance of appeal.

## C. Post-Conviction Relief- Commonwealth Courts

Lambert, acting *pro se*, sought relief under Pennsylvania's Post Conviction Relief Act. 42 Pa. Const. Stat. §§ 4541 *et seq*. Appointed counsel filed a no-merit letter, and the PCRA court granted counsel's request to withdraw and dismissed Lambert's petition. Lambert appealed *pro se* to the Superior Court. It concluded that appointed counsel's no-merit letter was defective and remanded with an order that the PCRA court appoint new counsel.

On remand, new counsel also filed a no-merit letter. The PCRA court granted this second attorney's request to withdraw and issued notice of its intent to dismiss Lambert's petition without a hearing. Lambert filed an amended *pro se* petition alleging that new PCRA counsel was ineffective and asserting why the court should grant him relief. The PCRA court denied Lambert's petition, and the Superior Court affirmed. The Pennsylvania Supreme Court again denied allowance of appeal.

## D. Post-Conviction Relief- Federal Court

Lambert then filed a *pro se* federal *habeas* petition in the District Court. He raised fourteen grounds for relief, including that (1) the trial court violated his Confrontation Clause rights in failing to instruct the jury not to consider statements of his co-defendant related by Dr. Kessel as evidence against him, (2) trial counsel was ineffective for failing to object to the alleged Confrontation Clause error, and (3) there was insufficient evidence to sustain the convictions.

8

The Magistrate Judge concluded that the trial court violated Lambert's Confrontation Clause rights; she found that Tillman's statements to his psychiatrist about the voices outside his head were incriminating on their face because it would have been immediately apparent to the jury that Lambert was the person in the car who, after learning of Tillman's altercation with Smith, encouraged him to seek revenge.[2] Though the Magistrate Judge also recommended denying relief on the sufficiency-of-the-evidence claim, she recognized that "at some point, weakly supported convictions, which require barely tenable inferences for their affirmance, must be reversed… [, and t]his might very well be such a case."). J.A. 23. The Judge therefore recommended granting a certificate of appealability on this claim. The District Court adopted the Report and Recommendation and ordered the Commonwealth to retry or release Lambert.

The Commonwealth moved for reconsideration, and this time the District Court vacated its order and referred the case back to the Magistrate Judge to determine (1) whether Lambert's Confrontation Clause claim and his ineffective assistance claim based on that violation were procedurally defaulted, and (2) whether the default was excused.

In her second Report and Recommendation, the Magistrate Judge concluded that Lambert had procedurally defaulted both claims and that there was no cause to excuse default. She also rejected the Confrontation Clause claim on

---

[2] Because Lambert challenges more than one portion of the interview between Tillman and the examining psychiatrist, we refer to the testimony as "statements." We note, however, that the Magistrate Judge referred to them collectively as a single statement.

the merits, reasoning that Tillman's statements were neither testimonial nor hearsay, and that any incriminating elements would not have been readily apparent when the statements were made.

The District Court denied relief, but granted a certificate of appealability as to the sufficiency-of-the-evidence claim. We expanded the certificate of appealability to cover whether Lambert is procedurally barred from pursuing his ineffective-assistance claim based on an alleged Confrontation Clause violation.

We agree with the District Court's conclusion that, while a close case, the Superior Court did not unreasonably apply federal law in finding the evidence was sufficient to support a conviction. We therefore deny relief on that claim. However, we conclude that PCRA counsel provided ineffective assistance in failing to raise Lambert's ineffective-assistance-of-trial-counsel claim based on the alleged Confrontation Clause violation. We further conclude that this claim has some merit. Therefore, Lambert has shown cause to excuse his default. We remand to the District Court for an evidentiary hearing to develop the record and to determine the merits of the ineffectiveness claim against trial counsel.

## II. Standard of Review

We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253 and conduct a fresh review of the District Court's legal conclusions. *Werts v. Vaughn*, 228 F.3d 178, 191 (3d Cir. 2000).

We review a state court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA's deferential standard of review, if a claim is "adjudicated on the merits in State court

10

proceedings," we can grant relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d).

We can grant relief under the "contrary to" standard only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision from a state court "is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). (Nothing is before us claiming an unreasonable determination of facts.)

### III. Analysis

#### A. Sufficiency-of-the-Evidence Claim

Lambert first argues that the Commonwealth had insufficient evidence to sustain his convictions. For such a claim, we ask if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in text).

*Jackson* claims face a high bar in federal *habeas* proceedings because they are subject to two layers of deference. "First, on direct appeal. . . [a] reviewing court may set aside the jury's verdict on the ground of insufficient

11

evidence only if no rational trier of fact could have agreed with the jury." Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge . . . [unless] the state court decision was objectively unreasonable." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (quotations omitted) (citations omitted).

### 1. Elements of conspiracy under state law

A conviction for criminal conspiracy requires the trier of fact to find: "(1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." *Commonwealth v. Johnson,* 985 A.2d 915, 920 (Pa. 2009) (quotation omitted). The unlawful agreement "may be established inferentially by circumstantial evidence, i.e.[,] the relations, conduct or circumstances of the parties or overt acts on the part of co-conspirators." *Commonwealth v. Spotz,* 716 A.2d 580, 592 (Pa. 1998) (citation omitted).

### 2. The Superior Court's decision

The Superior Court looked to whether circumstantial evidence of association, presence, knowledge, and participation could "furnish a web of evidence linking [Lambert] to the alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." *Lambert*, 795 A.2d at 1016 (quotations and citations omitted). The Court found Tillman and Lambert were associates based on evidence of their friendship. *Id.* at 1017. Witness testimony identified Lambert as present at the curbside when Tillman left the house where Thomas and Freeman lived. *Id.* In addressing

12

knowledge and participation, the Court relied on the following facts: Lambert drove Tillman to the house, remained double-parked in the car after Tillman got out on the passenger's side (leaving the car door open), and was close enough to see the damage to the front door of the house as Tillman "forced his way into the home and [] fired a gun." *Id.* Witness testimony also alleged that Lambert drove Tillman from the crime scene.

Because we must defer to a jury's findings and to a state court's conclusions when circumstantial evidence, viewed in the light most favorable to the prosecution, provides some reasonable basis for jurors to infer required intent, *Coleman*, 132 S. Ct at 2064, we conclude that the Superior Court's finding was not unreasonable. A rational juror could have inferred, based on the testimony from lay and expert witnesses, that Lambert knew Tillman intended to get his money back and drove him to the scene of the crime with the intent to help him do so. A juror could have further inferred that, by waiting double-parked with the door open, Lambert intended to facilitate burglary by providing a getaway car. This web of inferences would be sufficient for a juror to find Lambert and Tillman had a "shared criminal plan."[3] Thus we cannot say that no rational trier of fact could have agreed with the verdict. We therefore cannot conclude that it was objectively unreasonable for the Superior Court to decide that Lambert was guilty of the crimes convicted.

---

[3] Lambert argues that the record cannot establish his foreknowledge of the burglary under the standard in *Rosemond v. United States*, 134 S. Ct 1240 (2014), but that decision post-dates the Superior Court's decision and therefore does not qualify as clearly established Supreme Court precedent at the time of the Superior Court's ruling.

## B. Ineffective Assistance and the Confrontation Clause.

Lambert argues that the psychiatrist's testimony relating Tillman's statements about voices he was hearing from "outside his head" implicated Lambert's Sixth Amendment right to confront the person who actually mate those statements (Tillman). Based on this alleged Confrontation Clause violation, he contends trial counsel was ineffective in failing to request a limiting jury instruction. Lambert concedes that he has procedurally defaulted this claim. He can overcome the default if he can show that "some objective factor external to the defense impeded [his] efforts to comply with the state's procedural rule." *Coleman*, 501 U.S. at 753.

Lambert argues that ineffective assistance of PCRA counsel was the external factor that precluded him from raising the limiting-instruction claim in the first instance in his PCRA petition. Where (as here) state law requires a petitioner to wait until the first collateral proceeding to raise trial counsel ineffectiveness, PCRA counsel's ineffectiveness may provide cause to excuse the defaulted ineffective-assistance-of-trial-counsel claim. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012); *see also Buck v. Davis*, 137 S. Ct. 759, 779-80 (2017).

For PCRA counsel's performance to qualify as constitutionally deficient, it must fall "below an objective standard of reasonableness," and Lambert must be prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Even if he can meet this standard, he must also "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has 'some merit'." *Martinez*, 132 S. Ct. at 1318-19 (citation omitted).

14

Because the merit of Lambert's ineffective-assistance-of-trial-counsel claim informs our consideration of whether PCRA counsel was ineffective and whether Lambert was prejudiced by PCRA counsel's conduct, we address his ineffective-assistance-of-trial-counsel claim first. As a threshold matter, Lambert must show that Tillman's statements related by Dr. Kessel were testimony used for a hearsay purpose against him. If Tillman's statements qualify as testimonial hearsay, they are subject to the Confrontation Clause, which requires the court to instruct the jury that it cannot rely on these statements to support inferences of Lambert's guilt (because Tillman was not subject to cross-examination). *See Richardson v. Marsh*, 481 U.S. 200, 207 (1987). Next, Lambert must demonstrate that he presents a substantial claim that trial counsel's failure to request such a limiting instruction was objectively unreasonable and prejudiced him.

### 1. Right to Confrontation

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This right applies only to testimonial statements offered for their truth. *Crawford v. Washington,* 541 U.S. 36, 50-51; 59-60 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). If a witness is unavailable (and Tillman was so because he opted not to testify), hearsay testimony of that person is not admissible unless the defendant had a prior opportunity for cross-examination. *Id.* at 68. However, the Confrontation Clause does not apply to non-testimonial statements or testimony that is not used for a hearsay purpose. *Davis v. Washington*, 547 U.S. 822, 823-24 (2006).

15

We address first the meaning of "testimonial." *Ex parte* examinations and interrogations used as a functional equivalent for in-court testimony are the "core class of 'testimonial' statements" that directly implicate the right of confrontation. *Crawford*, 541 U.S. 36 at 68. When a statement does not fall within this "core class," it is still testimonial if it was taken with the primary purpose of creating an out-of-court substitute for trial testimony. *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). We analyze the circumstances in which the statement was taken to assess what reasonable participants would perceive the primary purpose to be. *Ohio v. Clark*, 135 S. Ct. 2173, 2183 (2016). As Tillman did not make his statements during an *ex parte* investigation or custodial interrogation, we apply the primary purpose test.

The Commonwealth argues that Tillman's statements cannot be testimonial because they were not made with the primary purpose of creating evidence for the prosecution. However, the text of the Confrontation Clause does not constrain the time at which one becomes a "'witnes[s].' Indeed, . . . a declarant may become a 'witnes[s]' before the accused's prosecution." *Williams v. Illinois*, 132. S. Ct. 2221, 2262 (2012) (Thomas, J. concurring) (alteration in original).

We also cannot accept the Commonwealth's position that the Confrontation Clause applies only to statements made with the intent to accuse. "A statement that is not facially inculpatory may turn out to be highly probative of a defendant's guilt when considered with other evidence." *Id.* While the individual making the statement may do so without the intent to accuse the defendant, she may become a witness against the accused in the context of trial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 (2009) (emphasizing that Confrontation Clause jurisprudence recognizes the right to confront a witness even where the "adverse witness's

16

testimony, taken alone, will not suffice to convict."). Thus Lambert need not prove that the primary purpose of recording Tillman's statements was to accuse him or Tillman of the alleged criminal acts. Instead, in the context of the joint trial, Lambert needs only to show that Tillman's statements to Dr. Kessel were made with the primary purpose of substituting for his in-court testimony about the crime. We believe that occurred here; hence Tillman's statements are testimonial.

### a. Hearsay analysis

Because these statements were testimonial, we next determine if the prosecution used them for the truth asserted therein to establish the elements required to convict. In making this determination, we are not to accept the prosecution's "not-for-truth" rationale at face value, but instead must determine if there is a "'*legitimate*, non hearsay purpose,'" *Williams*, 132 S. Ct. at 2257 (Thomas, J., concurring) (citing *Street*, 471 U.S. at 417) (emphasis in text), by "thoroughly examin[ing] the use of the out-of-court [statements] and the efficacy of a limiting instruction," *id.*

While the expert used Tillman's statements to form an opinion about Tillman's intent to commit a crime (known to lawyers and judges by the Latin term "*mens rea*"), the prosecutor may have relied on it to establish Lambert's guilt. In closing, the prosecutor urged the jury to draw the inference that Lambert and Tillman plotted together in the car (to support the conclusion that Lambert had foreknowledge of Tillman's criminal plan and intended to aid in its completion). If the jury believed Tillman's statements to Dr. Kessel—asserting that Tillman responded to a voice (coming from outside his head) and encouraging him to "get back" at Smith and Thomas, it could infer from this belief that Lambert—the only other person in the car to supply the voice—intended to aid Tillman in carrying out the crime. If the prosecution

17

relied on Tillman's statements to support this inference, they would qualify as hearsay.

That Lambert was tried before a jury instead of at a bench trial makes us particularly concerned that the statements were used for a hearsay purpose. When an expert testifies before a jury, federal law generally prohibits her from disclosing facts about which she lacks personal knowledge. While a trial judge "presum[ably] will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose," *Williams*, 132 S. Ct. at 2235, this presumption does not apply to a jury. Indeed, the Supreme Court has suggested that even "non-hearsay" testimonial evidence poses a danger of confusing the jury and requires limiting instructions. *Id.* at 2236 ("The dissent's argument would have force if petitioner had elected to have a jury trial. In that event, there would have been a danger of the jury's taking [the expert's] testimony as proof [of the matter asserted in the statement on which she relied in forming her opinion]. Absent an evaluation of the risk of juror confusion and careful jury instructions, the testimony could not have gone to the jury.").

To the extent the prosecution relied on Tillman's statements to Dr. Kessel for their truth, a limiting instruction to the jury was needed. Because the Confrontation Clause prohibits the Commonwealth from using testimonial statements by non-testifying witnesses to establish a defendant's guilt, it may not use redacted testimony from a non-testifying co-defendant to support inferences against the defendant in their joint trial. *See Richardson*, 481 U.S. at 207; *Bruton v. U.S.*, 391 123, 137 (1968). Even when a non-testifying witness's statement is redacted so that it is no longer facially incriminating, a court presiding over such a joint trial must nonetheless instruct the jury that it may not

18

consider this evidence in determining whether the state met its burden of proving the defendant's guilt. *Gray v. Maryland*, 523 U.S. 185, 189 (1998); *Richardson*, 481 U.S. at 211. Without such a limiting instruction, inferentially incriminating statements make the non-testifying co-defendant a witness against the accused in violation of the Confrontation Clause. *Cf. Melendez-Diaz*, 557 U.S. at 314 n.4 ("The very premise of [*Gray*] was that, without the limiting instruction[,] even admission of a redacted confession containing evidence [that only supports incriminating inferences in the context of later evidence introduced at trial] would have violated the defendant's Sixth Amendment rights.").

We conclude that reasonable jurists could find that the prosecutor's closing argument relied on the truth of Tillman's statements to Dr. Kessel to draw inferences of Lambert's foreknowledge and intent to aid in Tillman's criminal plan. Our remand includes the request that the District Court consider this issue.

## 2. Ineffective Assistance of Trial Counsel

Lambert next alleges that counsel was ineffective in failing to request jury instructions that would protect his Confrontation Clause rights. We recognize that the "right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405 (1965). Thus a good argument exists that Lambert presents a substantial claim that it would be objectively unreasonable for trial counsel to allow the Commonwealth to violate this right by failing to request a limiting instruction.

As for the prejudice prong of *Strickland*, without Dr. Kessel's testimony about Tillman's statements to her, there

would be no direct evidence to establish more than Lambert's mere presence at, and failure to leave, the scene of the crime: there was no direct evidence indicating any agreement between Tillman and Lambert. The prosecutor likely recognized this gap, and thus inferred in her closing argument that Lambert encouraged Tillman to seek vengeance against the residents of the Thomas-Freeman household when the two were in the car together. Lambert therefore has presented a substantial claim that a jury instruction was required here.

### 3. Necessity of an evidentiary hearing

Determining whether trial counsel was ineffective often requires a court to develop evidence beyond the trial record. *Martinez,* 132 S. Ct. at 1317-18. Because the Pennsylvania Superior Court determined Lambert's claim of ineffective assistance was procedurally defaulted, it never conducted an evidentiary hearing to develop this claim. Without such a hearing, Lambert had no meaningful opportunity to challenge *Strickland*'s presumption that trial counsel acted reasonably.

And it wasn't that Lambert didn't request a hearing. His "Response to Notice of Intention to Dismiss/Request For Evidentiary Hearing and Appointment of New Counsel," clarifying his "Second Supplemental Amended PCRA Petition," demonstrates sufficient efforts to develop the factual basis for his ineffective-assistance claim to survive 2254(e)(2)'s jurisdictional bar. *Thomas v. Horn*, 570 F.3d 105, 125-26 (3d Cir. 2009). Yet the Superior Court determined the claim was defaulted under an independent state procedural law.[4]

---

[4] While the Magistrate Judge concluded that the Superior Court's disposition of Lambert's Confrontation Clause claim qualified as a decision on the merits under 28 U.S.C.

20

In this context, we may direct the District Court to conduct that hearing. *Horn*, 570 F.3d at 125; *Marshall v. Hendricks*, 307 F.3d 36, 106, 117 (3d. Cir. 2002). Whether we do so depends on whether Lambert has shown PCRA counsel's ineffective assistance caused procedural default of his ineffective-assistance-of-trial-counsel claim, and prejudice resulted.

### 4. PCRA counsel's conduct excuses default of Lambert's ineffective-assistance claim

If Lambert can establish that PCRA counsel was ineffective in failing to raise the former's ineffective-assistance-of-trial-counsel claim based on the Confrontation Clause violation, the District Court may consider the merits

---

§ 2254(d), we disagree. The Superior Court first determined that Lambert waived this claim by failing to raise it previously and then added: "To the extent that Lambert did raise these claims before the PCRA court, we *would* conclude that they each lack merit." J.A. at 418 (emphasis added). While "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary," *Harrington v. Richter*, 562 U.S. 86, 99 (2011), "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely, *id.* at 99-100. Here the Superior Court provided that reason, asserting that Lambert's claim was waived on a state procedural ground. J.A. at 418. This reason is clear on the face of the opinion without recourse to the record before the state courts. Moreover, the full text of the opinion suggests the statement about the merits of the claim is a *dictum*, not a holding in the alternative. *Id.* at 417-19.

21

of this otherwise-defaulted claim. *Martinez*, 132 S. Ct. at 1318. In his appellate brief to the Superior Court, Lambert argued: "The factual record is devoid of any recitation by the trial court on the requisite instructions to the jury 'not to consider the redacted confession of Mr. Tillman as evidence against [Lambert,]" and the prosecutor "both explicitly and impliedly used Mr. Tillman's confession to argue . . . that [Lambert] was guilty of conspiring to burglarize and murder Ann Marie Thomas." State Habeas App'x, Ex. L, 71. PCRA counsel recast this claim as a challenge to admission of "several hearsay statements made by the co-defendant," and characterized it as meritless because "the co-defendant [Tillman] was tried with the Petitioner [Lambert] at the same trial[,] so the statements are not hearsay but a direct party admission." J.A. at 390. This justification misstates the law.

"An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland.*" *Hinton v. Alabam*a, 134 S. Ct 1081, 1088–89 (2014). It is well established that the jury cannot consider statements offered for the truth of the matter asserted by a non-testifying co-defendant as evidence against the defendant. *Gray*, 523 U.S. 185. Moreover, where the evidence is admitted at trial, the jury must be instructed that it may only consider the evidence in the case against the co-defendant. *Melendez-Diaz*, 557 U.S. at 314 n.4. By characterizing the statements as party admissions, PCRA counsel accepted that the Commonwealth sought to use them for the truth of the matter asserted. Such hearsay statements of a non-testifying co-defendant are not admissible as "direct admissions" when they are used by the prosecution as evidence against the defendant. The conclusion: even a cursory investigation into Sixth Amendment jurisprudence would lead counsel to identify the potential Confrontation Clause violation.

Per our discussion in the preceding sections, admission of these inferentially incriminating statements without a limiting instruction was fundamental to Lambert's case. Moreover, at the post-conviction stage we cannot discern any objectively reasonable strategy for PCRA counsel to reject this potentially meritorious claim.

As for prejudice, Lambert has demonstrated "a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. As noted, the only direct link in the chain of inferences for the conspiracy conviction was Dr. Kessel's testimony relaying Tillman's statements, which PCRA counsel represented in his no-merit letter as direct-party admissions. In response to that no-merit letter, the PCRA court denied Lambert's request for an evidentiary hearing and dismissed his appeal. The Superior Court affirmed the PCRA court's decision. Neither court reached the merits of the underlying ineffectiveness claim against trial counsel. Had PCRA counsel investigated and presented the claim that trial counsel was ineffective in failing to request a limiting instruction, the PCRA court would have considered it and the Superior Court would have reviewed this determination in depth. Because the claim no doubt has some (and arguably more than some) merit, we conclude that PCRA counsel's ineffective assistance excuses Lambert's procedural default.

\* \* \* \* \*

We vacate and remand to the District Court with instructions to conduct an evidentiary hearing to consider the ineffective assistance of Lambert's trial counsel.

23