**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 22-2054 & 22-2071
_____

UNITED STATES OF AMERICA

v.

DONNA SUMMERLIN,
                                   Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cr-00261-001)
District Judge: Honorable Jennifer P. Wilson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 28, 2023

Before: KRAUSE, AMBRO, and SMITH, *Circuit Judges*

(Filed: October 6, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

**KRAUSE**, *Circuit Judge*.

Donna Summerlin was convicted for conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). On appeal, she contends that the District Court erred by admitting testimony and accompanying emails that violate the rule against hearsay, Fed. R. Evid. 802, and her rights under the Confrontation Clause of the Sixth Amendment, U.S. Const. amend. VI. Perceiving no error, we will affirm.

## DISCUSSION[1]

Summerlin argues that the District Court wrongly admitted the testimony of Connie Green—the daughter of one of Summerlin's victims—and emails between that victim, Ethelene Copeland, and Roger Beard, Summerlin's co-conspirator. We reject both arguments.

With limited exceptions, Federal Rule of Evidence 802 forbids the admission of hearsay, defined as any statement made by a non-testifying declarant that is offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). The Confrontation Clause, on the other hand, protects a defendant's right to cross-examine those who testify against her by restricting the admission of a non-testifying declarant's "testimonial

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's hearsay ruling for abuse of discretion, *United States v. Tyler*, 281 F.3d 84, 98 (3d Cir. 2002), its interpretation of the Federal Rules of Evidence de novo, *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000), and its admissibility determinations for co-conspirator statements for clear error, *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002).

2

statements offered for their truth." *Lambert v. Warden Greene SCI*, 861 F.3d 459, 469 (3d Cir. 2017). Neither is implicated here.

## I. Hearsay Challenge

Summerlin directs her hearsay challenge to two categories of evidence. First, she argues that Green's testimony about Summerlin's correspondence with Copeland is "textbook hearsay." Opening Br. 11. Those statements, however, were not offered for their truth, and therefore lacked the "requisite assertive intent" contemplated by Rule 801. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 330 (3d Cir. 2005). Some were offered as context for the actions and statements of Green and other family members. *E.g.*, App. 424 ("She asked me to call the neighbor to see if a package had arrived."). Other statements showed her parents' emotional state, *e.g.*, App. 424 (describing her mother as "[a]nxious or worried, stressed a little bit"); App. 425 (describing her mother as "seem[ing] upset" and her father as "[v]ery angry"), and thus would fall within the then-existing mental, emotional, or physical condition exception to the rule against hearsay, Fed. R. Evid. 803(3). Still other statements relayed "excited utterances" that fall within another exception to the rule, Fed. R. Evid. 803(2). *E.g.*, App. 425 (describing how Copeland "reassur[ed]" Green and explained that the scam was an "investment opportunity relayed to her from a friend").

Second, Summerlin challenges the admission of emails between Copeland and Roger Beard, as well as Green's related testimony.[2] But the testimony is definitionally

---

[2] Summerlin further contends that these emails were not admissible under Fed. R. Evid. 901(a) because they were not properly authenticated. As we have explained, the

not hearsay because it was offered against Summerlin, an "opposing party," and relates to statements that were "made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). All three of the requirements for such "co-conspirator statements" are satisfied because the proponent—here, the Government—has established by a preponderance of the evidence that: (1) there existed an agreement to commit fraud and money laundering; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were made in furtherance of the conspiracy. *United States v. Bobb*, 471 F.3d 491, 498 (3d Cir. 2006).[3] That is, a wealth of evidence, including bank records and statements and Summerlin's own testimony, establish the existence of a conspiracy; the challenged emails, combined with Summerlin's trial testimony, show that she and Beard were both members of the conspiracy; and the emails between Copeland and Beard were clearly in furtherance of Beard and Summerlin's scheme.[4]

---

standard for authenticating evidence is "slight." *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985). Here, Green's testimony regarding how she found the emails on her parents' computer—combined with other evidence linking "Roger Beard" to the conspiracy—sufficed to authenticate them. *See United States v. Browne*, 834 F.3d 403, 411–15 (3d Cir. 2016) (describing various types of extrinsic evidence that could be used to authenticate online communications).

[3] To prove these elements, the Government may rely on the co-conspirator's statements themselves. *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

[4] The responsive emails from Copeland to Beard likewise are not hearsay because they were offered not for their truth, but rather to "put the statements of the [co-conspirator] 'into perspective and make them intelligible to the jury . . . .'" *United States v. Hendricks*, 395 F.3d 173, 184 (3d Cir. 2005) (quoting *United States v. McDowell*, 918 F.2d 1004, 1007 (1st Cir. 1990)); *see, e.g.*, App. 430 ("We do not feel good this morning."); App. 431 ("[W]e are very concerned."); App. 430 ("I will wait for the information."); App. 430 ("I beg you to check with Donna if she will accept a personal

In any event, to the extent that the admission of Green's testimony or the emails was error (which it was not), that error would be harmless on this record because it is "highly probable that the error did not contribute to the judgment." *United States v. Browne*, 834 F.3d 403, 444 (3d Cir. 2016) (quoting *United States v. Brown*, 765 F.3d 278, 295 (3d Cir. 2014)). The trial record is replete with evidence of Summerlin's participation in the fraudulent scheme, including testimony by another of Summerlin's victims, App. 266, Summerlin's own testimony about performing middleperson duties, App. 466–71, 475–77, and even Summerlin's testimony that she received money from Copeland, App. 476. Notably, in her testimony, Summerlin did not challenge the authenticity of the emails or the evidence that she served as a middleperson, arguing instead that she did not *intend* to defraud anyone. App. 488, 494.

In sum, there was no error, let alone reversible error, in the District Court's admission of Green's testimony and the associated email exchange.

## II.    Confrontation Clause Claim

Summerlin's arguments under the Confrontation Clause are no more convincing because the admission of Green's testimony did not violate the rule against hearsay, much less the Constitution. In addition, the Confrontation Clause applies only to "testimonial statements offered for their truth," *Lambert*, 861 F.3d at 469, and to qualify as "testimonial," the challenged statements must have been made or elicited with the "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later

---

check . . . ."); App. 431 ("Use e-mail for now."); App. 431 ("Will it be the same info . . . ?").

criminal prosecution," *Michigan v. Bryant*, 562 U.S. 344, 375 (2011) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

Here, however, the challenged testimony and emails simply reflect a fraudster's contemporaneous efforts to elicit money from Copeland, Copeland's panicked responses, and spontaneous family interactions. They were not the result of a police interrogation, deposition, or trial testimony, *see Davis*, 547 U.S. at 822, 824–25, and "the circumstances in which [they occurred]" would not permit a "reasonable participant[] [to] perceive the[ir] primary purpose" to be "substituting for . . . in-court testimony about the crime," *Lambert*, 861 F.3d at 470. Accordingly, these statements are nontestimonial and do not implicate the Confrontation Clause.

## CONCLUSION

For the foregoing reasons, we will affirm the decision of the District Court.