**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2514
_____

JASON PAUL MAPLE

v.

SUPERINTENDENT ALBION SCI,
                              Appellant.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:17-cv-00529)
District Judge: Honorable Cathy Bissoon
_____

Argued: September 28, 2021

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: December 13, 2021)
_____

Michael A. Pacek
John W. Peck    [ARGUED]
WESTMORELAND COUNTY

OFFICE OF DISTRICT ATTORNEY
2 North Main Street, Suite 206
Greensburg, PA 15601
    *Counsel for Appellant*

Christopher M. Capozzi    [ARGUED]
100 Ross Street, Suite 340
Pittsburgh, PA 15219
    *Counsel for Appellee*

———————————

OPINION OF THE COURT

———————————

BIBAS, *Circuit Judge*.

Not every murder is a mystery. Here, we know who did it: Jason Maple. On federal habeas, he challenges his murder and attempted-murder convictions. He says police violated *Miranda* by interrogating him before reading him his rights. But after weighing the strong evidence against him, Pennsylvania courts held that was harmless error. Because that ruling was reasonable, we will reverse the District Court's grant of habeas.

## I. BACKGROUND

Maple was furious at William Teck. Maple's girlfriend, Jennifer Vinsek, had told him that Teck had tried to rape her. Later, they found her apartment ransacked and blamed Teck and his friend, Patrick Altman. So Maple tracked them down at a bar, where he brawled with them before being bounced. Dissatisfied, Vinsek called the police to report the burglary.

When police arrived, Maple asked if they could "either shoot [Teck] or arrest him." App. 102. If not, Maple warned, "maybe I'll just handle it my way" and "take care of it myself." App. 103. A few hours later, Maple found Teck and Altman and shot at them. He missed Altman but killed Teck.

When police found Teck's body, they suspected Maple and Vinsek. Detectives quickly interviewed Altman, who told them about the bar fight. They learned that Maple owned a shotgun. So they went to talk to Maple and Vinsek.

The plainclothes detectives identified themselves as police. They told the couple that they were investigating Teck's death. They said Maple was not under arrest but asked to talk with him about the murder. Maple agreed, and Vinsek accompanied them to the police station.

At the station, the detectives questioned Vinsek and then Maple separately. At first, they failed to read him his *Miranda* rights. App. 105–06; *see Miranda v. Arizona*, 384 U.S. 436 (1966). After about an hour, Maple finally confessed. He was then arrested and read *Miranda* warnings. He waived those rights and confessed again, this time on tape.

Maple moved to suppress both confessions, but the Pennsylvania court admitted them, finding no *Miranda* violation. At trial, Maple confessed again, but claimed he was drunk at the time. Yet the prosecution produced a mountain of evidence that proved his intent. Several witnesses testified to Maple's earlier confrontations with Teck. The officers who responded to the burglary call relayed that Maple had asked them to shoot or arrest Teck. Altman and three witnesses testified to the

3

shooting. And they all said that, though Maple had been drinking, he did not clearly look intoxicated. This evidence convinced the jury. Maple was convicted of first-degree murder and attempted murder, then sentenced to life.

Maple challenged his convictions unsuccessfully. He argued that the police had violated his *Miranda* rights by getting confessions that tainted the trial. The Pennsylvania Superior Court agreed, but it held that the error was harmless. The Pennsylvania Supreme Court denied review. Pennsylvania courts also rejected his two state-habeas (technically, PCRA) petitions.

So Maple filed this first federal habeas petition, and the District Court granted it. Because Pennsylvania had not appealed the state-court finding of a *Miranda* violation, the District Court thought that the exhaustion requirement barred review. It also held that the *Miranda* error was not harmless. Although Maple admitted at trial that he had shot Teck, it reasoned that his earlier unwarned confession may have forced him to testify. Pennsylvania now appeals.

Because the District Court granted habeas without an evidentiary hearing, we review de novo. *Saranchak v. Beard*, 616 F.3d 292, 301 (3d Cir. 2010). We presume that the Superior Court's factual findings were correct. 28 U.S.C. § 2254(e)(1). And we defer to its rulings unless they were "contrary to, or involved an unreasonable application of, clearly established Federal law" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

## II. THE SUPERIOR COURT REASONABLY FOUND
## ANY ERROR HARMLESS

To start, the District Court erred in relying on the exhaustion doctrine. True, before reaching federal court, "an *applicant*" for habeas relief must first "exhaust[ ] the remedies available in [state] courts." 28 U.S.C. § 2254(b)(1), (b)(1)(A) (emphasis added). That requires raising and appealing the same arguments at each step. But the exhaustion requirement is asymmetrical: as Maple rightly concedes, it applies only to prisoners seeking habeas relief, not to states defending convictions. So even though Pennsylvania did not appeal the finding of a *Miranda* violation in state court, we can still review the issue.

Yet we need not reach the merits of the *Miranda* issue. Even if there was a *Miranda* error, it was harmless. *Cf. Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding that involuntary confessions are subject to harmless-error review). When reviewing the state court's finding of harmless error, we ask whether that "harmlessness determination itself was unreasonable." *Johnson v. Lamas*, 850 F.3d 119, 134 (3d Cir. 2017) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)); *see* 28 U.S.C. § 2254(d)(1). It was not.

Even ignoring Maple's confessions, other evidence at trial overwhelmingly incriminated him. A chorus of witnesses linked him to the murder. Three of them saw Maple and Teck in a bar fight. One eyewitness saw him shoot Teck and miss Altman, and two others saw him at the scene with the shotgun right before the shooting. And Altman himself testified that he was shot at by a man with Maple's build.

This testimony also proved that Maple killed Teck intentionally, as Pennsylvania law required for a first-degree murder conviction. *See* 18 Pa. Cons. Stat. §2502(a). Maple had been angry at Teck for several days after Vinsek told him of the attempted rape. And their conflict had escalated: two police officers and another witness heard Maple ask the officers to arrest or shoot Teck. A few hours later, he followed Teck and Altman, pointed a shotgun at them, and fired. This evidence alone sufficed to prove premeditation. *Commonwealth v. O'Searo*, 352 A.2d 30, 36–38 (Pa. 1976).

Plus, the testimony undermined Maple's intoxication defense. Pennsylvania lets a first-degree murder defendant claim voluntary intoxication as a partial defense only when he was "so overwhelmed or overpowered by [alcohol] to the point of losing his faculties at the time the crime was committed." *Commonwealth v. Fletcher*, 861 A.2d 898, 907–08 (Pa. 2004). Maple said he was drunk, and Vinsek's statements were internally inconsistent on that point. But every other witness who was asked said Maple did not seem clearly intoxicated. So his only defense would not fly.

* * * * *

The case against Maple was very strong. Even if the trial court should have suppressed his confession before *Miranda* warnings, any error was harmless. Maple doubtless would have been convicted of first-degree murder of Teck and trying to murder Altman. So we will reverse and remand for the District Court to deny his habeas petition.

6