**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

Nos. 22-2053 and 22-2076

———————————

EDDIE WILLIAMS,
                    Appellant in No. 22-2076

v.

SUPERINTENDENT GREENE SCI;
ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY LEBANON COUNTY,
                    Appellants in No. 22-2053

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-20-cv-00908)
District Judge: Honorable Robert D. Mariani

———————————

Argued November 9, 2023

Before: RESTREPO, SCIRICA, and SMITH, *Circuit Judges*

(Filed: August 13, 2024)

———————————

Brian L. Deiderick           **[ARGUED]**
Office of the District Attorney
County of Lebanon
400 S. 8th Street, Rm. 11
Lebanon, PA 17042

Ronald Eisenberg
Pennsylvania Office of Attorney General
1600 Arch Street, Ste. 300
Philadelphia, PA 19103
      *Counsel for Appellants in No. 22-2053*

Michael Wiseman           **[ARGUED]**
Wiseman & Schwartz, LLP
718 Arch Street, Ste. 702
Philadelphia, PA 19106
      *Counsel for Appellant in No. 22-2076*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*.

The framers drafted the Bill of Rights to contain broad principles curbing the powers of our federal government. *See, e.g.*, U.S. Const. amend. V. They also included more particularized rules to safeguard individual liberty like the Sixth Amendment, which defends against unjustified

deprivations of life and liberty[1] by mandating that the government afford several specific procedural protections to the criminally accused.[2] This appeal involves one such guarantee: an accused person's right "to be confronted with the witnesses against [them]" pursuant to the Confrontation Clause of the Sixth Amendment.

In 2015, the Commonwealth of Pennsylvania prosecuted Eddie Williams for a series of crimes related to an

---

[1] *See, e.g.*, *Singer v. United States*, 380 U.S. 24, 31 (1965) ("The [jury trial] clause was clearly intended to protect the accused from oppression by the [g]overnment . . . ." (citation omitted)).

[2] The Supreme Court has applied all but one of the Sixth Amendment's protections to the states through the Due Process Clause of the Fourteenth Amendment. *See In re Oliver*, 333 U.S. 257, 272–74 (1948) (right to a public trial; right to notice of accusations); *Gideon v. Wainwright*, 372 U.S. 335, 342, 345 (1963) (right to counsel); *Pointer v. Texas*, 380 U.S. 400, 403 (1965) (right to confront hostile witnesses); *Parker v. Gladden*, 385 U.S. 363, 364 (1966) (right to an impartial jury); *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967) (right to a speedy trial); *Washington v. Texas*, 388 U.S. 14, 17–19 (1967) (right to compulsory process to obtain witness testimony; right to confront favorable witnesses). The Supreme Court has not yet ruled on the Vicinage Clause, but we have assumed "for the purposes of discussion, without expressing any views upon the matter, that the state-and-district guarantee is so closely related to the purpose of the jury-trial guarantee that it is applicable to the states." *Zicarelli v. Gray*, 543 F.2d 466, 479 (3d Cir. 1976).

alleged dispute over illegal drug profits that killed one person and seriously injured another. A jury returned a guilty verdict on all twenty counts, and the trial judge sentenced Mr. Williams to life imprisonment, plus a term of 21.5 to 47 years. But at trial, Mr. Williams's judge twice read a non-testifying codefendant's Criminal Information to the jury in violation of the Sixth Amendment. Mr. Williams's attorney's constitutionally ineffective response only made matters worse. These two interrelated injuries each justified the District Court's decision to grant habeas relief to Mr. Williams. After all, for our Constitution's liberty-ensuring principles to have any strength, they must, like a muscle, be used correctly, consistently, and forcefully. For the following reasons, we will affirm.

I

A decade ago, law enforcement saw Rick Cannon, Akeita Harden, and Mr. Williams leave the apartment complex in Lebanon, Pennsylvania, where Marcus Ortiz was killed, and Keith Crawford was grievously wounded—both by gunshots to the head. Arriving at the scene moments after the gunshots were reported, the responding patrol officer observed Mr. Williams and Mr. Cannon enter a vehicle driven by Ms. Harden. A car chase ensued, and all three suspects eventually abandoned the vehicle to flee on foot. Law enforcement apprehended Mr. Cannon and Ms. Harden that day, and Mr. Williams seven months later.

In July 2015, Mr. Cannon pleaded guilty to a twenty-count Criminal Information, which included homicide and attempted homicide charges, aggravated assault, robbery, possessing controlled substances with intent to deliver, two firearms charges, flight to avoid arrest, and conspiracy charges

4

related to each. Nine of those charges named Mr. Williams as a coconspirator. Meanwhile, Mr. Williams was charged with the same twenty offenses as Mr. Cannon and proceeded to a joint trial with Ms. Harden in October 2015.

Here marks the start of our controversy. During Mr. Williams's attorney's opening statement, he stated:

> Second thing that will make this case a little bit easier for you is that there's one guy who hasn't really been mentioned. . . . That guy's name is Rick Cannon. The reason that Mr. Cannon is so pivotal is because he's already said that he did this. He wrote down on a piece of paper under oath, yes, I killed that man. He stood in this very courtroom, put up his hand and took an oath and told Judge Kline, yes, I killed that man. He admitted that he killed him. Rick, we already know for an absolute fact that Rick Cannon killed the man.

Supp. App'x 121. The Commonwealth did not object contemporaneously, but, after opening statements concluded, explained at sidebar that it "[took] exception" to defense counsel's opening because it mischaracterized the facts. Supp. App'x 127; *see also id.* at 128 ("I think it's a mischaracterization of the facts to say that we know for a fact that Rick Cannon is the person that pulled the trigger . . . ."). In reality, the homicide count in Mr. Cannon's Criminal Information only read: "In that the Defendant, acting as a principal and/or accomplice[,] . . . did fire a gun at the victim striking him with a bullet." Supp. App'x 132.

5

As a "curative instruction," the trial court recommended "read[ing] into the record what Mr. Cannon pled guilty to" as that would "clear[] the air on the matter." Supp. App'x 129. The court explained that it thought it "fair" for the jury to hear that Mr. Cannon "pled [guilty] as a principal or an accomplice as well." Supp. App'x 130. From there, the scope of what was to be read increased:

> THE COURT: I think in fairness, because there's so much here, I know [Mr. Cannon is] on appeal, but I sentenced him, and I'll say he was sentenced after that. Okay. I'm going to read each one.
>
> [DEFENSE COUNSEL]: Just Count 1 you mean or you want to read the whole thing?
>
> THE COURT: I think I need to. . . . Does anybody have an objection?
>
> [COMMONWEALTH]: He pled to everything.
>
> THE COURT: He pled to everything. It will take a minute or two, but it's going to clear the air in terms of the opening.
>
> [DEFENSE COUNSEL]: I have no problem with that.

Supp. App'x 130–31. Having decided to read the entirety of the Criminal Information rather than just the homicide count, the trial court then addressed the jury:

> At a sidebar there was an objection made to certain characterization[s] of what the District Attorney knew or [did] not kn[o]w about Rick Cannon, and all parties have agreed that Rick Cannon pled guilty before this jurist. I took the guilty plea and sentenced him.
>
> So *to make it perfectly clear to the jury what he did and what he alleged he pled guilty to*, I'm going to read the entire [Criminal] Information concerning Rick Cannon, and I want you to just slowly listen carefully to it as I go through. All Counsel has agreed that *he pled guilty to all of these charges, and I sentenced him thereafter*. The amount of sentence is not a relevant factor here, *but the fact that he pled guilty to these [is a relevant factor]*. So take your time, and we will go through it.

Supp. App'x 131 (emphasis added). The trial court proceeded to read aloud the entirety of Mr. Cannon's twenty-count Criminal Information. Nine charges in Mr. Cannon's Criminal Information specifically named Mr. Williams as a coconspirator.[3] For instance, Count 5 read:

---

[3] The nine charges naming Mr. Williams included: Count 4, Criminal Conspiracy, Violation of the Drug Act; Counts 5 and 6, Criminal Conspiracy, Criminal Homicide; Counts 9 and 10, Criminal Conspiracy to Commit Aggravated Assault; Counts 13 and 14, Criminal Conspiracy, Aggravated Assault; Count 17, Criminal Conspiracy to Commit Robbery; and Count 19, Criminal Conspiracy to Commit Flight to Avoid Apprehension.

Count 5: Criminal Conspiracy Criminal Homicide . . . In that the Defendant, acting as *a principal and/or accomplice*, with the intent of promoting or facilitating the commission of the crime of Criminal Homicide, *unlawfully did agree with AKEITA HARDEN and/or EDDIE WILLIAMS*, that they or one or more of them would engage in conduct which constitutes such a crime, or an attempt or solicitation to commit such a crime, and did an overt act in the pursuance thereof, the Defendant did fire a gun at MARCUS ANTONIO ORTIZ striking him with a bullet.

App'x 36 (emphasis added).

This was not the last time Mr. Cannon's Criminal Information was raised during Mr. Williams's trial. Both defense counsel and the Commonwealth made it an issue in their closing arguments. First, defense counsel argued:

Rick Cannon shot Mr. Crawford, and he shot Mr. Ortiz, and we know that for one reason, because he, himself, said he did it. The Judge read to you the charges that Mr. Cannon pled guilty to, and I'm going to just read one of them to you, the first one, the most important one, Criminal Homicide.

That the Defendant it does say acting as a principal and/or accomplice, which is standard in this thing, unlawfully, intentionally, knowingly, recklessly or negligently did cause the death of

8

another human being, namely Marcus Ortiz, to wit . . . did cause the death of Marcus Ortiz, that is to say, the Defendant did fire a gun at the victim striking him with a bullet.

Mr. Cannon came into this courtroom right here and stood right over here. He put up his hand. He faced – he looked Judge Kline right in the eye, and he said, "I did it. That's what I did." And you know, when you give a plea, the Judge, the job of the Judge is to make sure you know what you're doing and you're doing it voluntarily, and Judge Kline did his job. He made sure he knew what he was talking about and knew that he was doing it voluntarily. There's a long series of questions that go on with that, and that was performed in this case. So we know for one thing that Mr. Cannon already pled guilty to killing Marcus Ortiz.

App'x 53–54. The Commonwealth responded in its closing by telling the jury:

Now, I want to talk to you about something else, and I've got a great deal of respect for both Defense Counsel; but I'm going to suggest that there's some disingenuous comments being made up here previously. You heard from [defense counsel] that all the evidence has to come from up there, not from down here, from that stand. Told you that multiple times, and then stands down here and says, ["]We know for a fact Rick Cannon pulled the trigger.["] Did that come

9

from the stand? It didn't. It comes from him telling you that. We don't know that for a fact. That has never been proven or said anywhere in this courtroom despite what he says to you, and it's disingenuous to say otherwise.

What we know is Rick Cannon pled guilty as a principal or accomplice to these crimes. He owned his share of this, okay; but if you want to ascribe great value to Rick Cannon's guilty plea, the next part of that disingenuousness was he didn't tell you everything about what Rick Cannon pled guilty to. He told you the part he wanted you to hear because *if you are going to ascribe any importance to Rick Cannon pleading guilty as a principal or an accomplice to the homicide and the shooting, then you better ascribe that same importance to this. Rick Cannon pled guilty to Criminal Conspiracy with Akeita Harden and Eddie Williams to commit homicide. So if they want you to ascribe importance to one, you got to follow along with the other.*

App'x 54 (emphasis added).

The jury would hear about the Criminal Information that named Mr. Williams as a coconspirator yet another time after it asked, about an hour and a half into deliberations, for "the stipulation as to what Rick Cannon pled guilty to." App'x 44. With the agreement of all counsel, the trial judge reread each count. The jury then found Mr. Williams guilty of all twenty charges, including murder in the first degree.

10

After denial of his direct appeal, Mr. Williams filed a Post-Conviction Relief Act (PCRA) petition in July 2017, arguing that his trial counsel rendered ineffective assistance for "deliberately inform[ing] the jury that [Mr. Cannon] pled guilty, . . . thus allowing the jury to hear that he pled guilty." Supp. App'x 77. The PCRA court found that Mr. Cannon's Criminal Information "never specifically or inferentially identifie[d] [Mr. Williams] in the role of principal or accessory" and therefore did not violate the Confrontation Clause. Supp. App'x 88. The Superior Court affirmed the PCRA court, and the Pennsylvania Supreme Court denied Mr. Williams's Petition for Allowance of Appeal on March 24, 2020.

In June 2020, Mr. Williams filed the petition at issue pursuant to 28 U.S.C. § 2254. He alleged five instances of ineffective assistance of counsel (IAC), including defense counsel's failure to object to the reading of Mr. Cannon's Criminal Information. Based on a review of the record, the Magistrate Judge prepared a Report and Recommendation (R&R). The R&R recommended denying Mr. Williams's petition with respect to his Confrontation Clause claims because the Criminal Information "did not describe the factual basis for the plea or serve a prosecutorial function. [It was] also not created for the purpose of being introduced at trial." *Williams v. Superintendent, SCI Greene*, No. 1:20-cv-0908, 2021 WL 8315910, at *23 (M.D. Pa. Nov. 15, 2021). Thus, the R&R concluded that the Criminal Information was neither testimonial, nor did it violate the Sixth Amendment, and trial counsel was therefore not ineffective for failing to object.

Mr. Williams filed objections to the R&R. The District Court sustained only his objections to the Confrontation Clause

11

issue and the related IAC claim, concluding that Mr. Williams was indeed entitled to relief, and vacated his conviction and sentence. *See Williams v. Superintendent, SCI Greene*, No. 3:20-CV-908, 2022 WL 1321128, at *1 (M.D. Pa. May 3, 2022). The Commonwealth timely appealed the District Court's decision, and Mr. Williams timely cross-appealed.[4]

## II

The District Court had jurisdiction under 28 U.S.C. § 2254, and we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. "Because the District Court granted habeas without an evidentiary hearing, we review de novo." *Maple v. Albion*, 19 F.4th 570, 571 (3d Cir. 2021). We review the state court's determinations on the merits for a decision "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). An unreasonable application of federal law occurs where "the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009). There is a "presumption of correctness" for determinations of a factual issue made by the state court and the petitioner has the burden of rebutting said presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[4] A panel of this Court granted Mr. Williams's request for a certificate of appealability on the arguments he raised on cross-appeal. Because we affirm the District Court's grant of relief, we need not address these arguments.

Meanwhile, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, federal habeas relief must only be granted where the petitioner demonstrates that the trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## III

Under the Sixth Amendment, all those criminally accused "shall enjoy the right . . . to be confronted with the witnesses against [them]." U.S. Const. amend. VI. As a result, the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Here, there is no dispute that Mr. Cannon was unavailable for trial and that Mr. Williams had no prior opportunity to cross examine him. The parties only disagree on whether Mr. Cannon's Criminal Information, as it was read to the jury, was testimonial.[5] It was.

---

[5] The Commonwealth seeks to avoid the substance of this case by arguing that 1) Mr. Williams's petition is untimely because he somehow waived his opportunity to take advantage of the prisoner mailbox rule by failing to assert it before the PCRA court and 2) Mr. Williams failed to exhaust his Confrontation Clause claim when he did not include the issue in his allocatur request to the Pennsylvania Supreme Court. As

"Testimony" is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (citation omitted). But "statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are [also] testimonial." *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005). Such statements include "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (omission in original) (quoting *Crawford*, 541 U.S. at 51–52); *see also United States v. Moreno*, 809 F.3d 766, 773-74 (3d Cir. 2016). Accomplice confessions to the authorities and plea allocutions are among the statements the Supreme Court has enumerated as "plainly testimonial." *Crawford*, 541 U.S. at 63–64.

The trial court's presentation of Mr. Cannon's Criminal Information operated, for all intents and purposes, as a plea allocution. In fact, at Mr. Cannon's actual plea allocution, the court read aloud each charge in the Criminal Information and asked him if he wished to enter a guilty plea to each. When Mr. Cannon answered affirmatively, he adopted, as his own, the statements read from the Criminal Information. To put it another way, the allegations related to charges set forth in the Criminal Information became Mr. Cannon's testimony. *See,*

---

neither claim has merit, we will proceed to the constitutional issues raised by this appeal.

*e.g.*, *United States v. Porter*, 933 F.3d 226, 229 (3d Cir. 2019) ("Courts have long understood a guilty plea to be 'a confession of all the facts charged in the indictment, and also of the evil intent imputed to the defendant.'" (quoting *Class v. United States*, 138 S. Ct. 798, 804 (2018)). It was Mr. Cannon's admission of guilt to those charges, together with the description of the charges themselves, as recited by the court, that were therefore testimonial. *See Crawford*, 541 U.S. at 64 (collecting cases illustrating "plainly testimonial statements," including plea allocutions).

So it was in effect Mr. Cannon's plea that was presented to the jury as "what [Mr. Cannon] did" and what "[a]ll counsel . . . agreed that he pled guilty to." Supp. App'x 131. After reading all twenty counts, nine of which named Mr. Williams as a coconspirator, the court reiterated that "to each of those Counts [Mr. Cannon] pled guilty." Supp. App'x 138. Mr. Cannon's Criminal Information, in effect, became a plea regardless of whether the trial court read the charges from the plea allocation transcript or from the document itself. Indeed, "[t]he trial judge telling the jury that [Mr.] Cannon 'pled guilty to all of these charges and I sentenced him thereafter' would surely be understood by the jury as [Mr.] Cannon having admitted guilt, thus bringing the [c]ourt's acknowledgement of [his] statement of guilt so near to the introduction of a confession as to make the two indistinguishable." *Williams*, 2022 WL 1321128, at *19.

The Criminal Information's testimonial and confessional nature puts it squarely in the territory of *Bruton*, where the Supreme Court held that an accused person is deprived of their Sixth Amendment right to confrontation when a non-testifying codefendant's confession naming them as a

participant in the crime is introduced at their joint trial, despite an instruction that the jury consider the statement only as to the codefendant. *Bruton v. United States*, 391 U.S. 123, 135–36 (1968); *see also Kirby v. United States*, 174 U.S. 47, 54–55 (1899) (in prosecution for receipt of stolen property, accomplices' guilty pleas inadmissible to prove that property received by the accused was "actually stolen from the United States" because the accused lacked opportunity to cross examine). The Supreme Court refined the *Bruton* rule in *Richardson v. Marsh*, recognizing that "the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence," 481 U.S. 200, 211 (1987), and has since qualified *Richardson* such that the use of "neutral references to some 'other person'" as opposed to "an obvious blank or the word 'deleted'" is not "directly accusatory" and thus does not violate *Bruton*. *Samia v. United States*, 143 S. Ct. 2004, 2010, 2017 (2023). No such redaction or modification occurred here.

As *Bruton* wisely warned, "[a] jury cannot segregate evidence into separate intellectual boxes. It cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A." 391 U.S. at 131 (internal quotation marks omitted). So, too, does the trial court's presentation of Mr. Cannon's guilty plea to crimes involving Mr. Williams present the "inevitable conclusion" that Mr. Williams committed the same or related criminal acts, especially with the trial court's endorsement of the Criminal Information as "mak[ing] it perfectly clear to the jury what

16

[Mr. Cannon] did." Supp. App'x 131. For these reasons, the reading of the Criminal Information to the jury as evidence of what Mr. Cannon pleaded guilty to violated Mr. Williams's right to confront the witness against him. It was "contrary to" clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1), which has specifically named plea allocutions and confessions as "plainly testimonial." *Crawford*, 541 U.S. at 63–64. We hold that no "fairminded jurist[] could disagree." *Harrington*, 562 U.S. at 101 (quoting *Yarborough*, 541 U.S. at 664).[6]

IV

The aforementioned *Bruton* violation occurred in response to, and was later encouraged by, Mr. Williams's own trial attorney. The District Court found that defense counsel's misrepresentation of the facts surrounding Mr. Cannon's plea, coupled with his failure to object to the reading of Mr.

---

[6] Indeed, though not part of the established precedent at the time of Mr. Williams's PCRA petition, the Supreme Court's decision in *Hemphill v. New York* reinforces our view. 595 U.S. 140 (2022). *Hemphill*'s facts are surprisingly similar to those we are faced with, though arguably less egregious because the plea allocution read at that trial did not name the accused. *Id.* at 144–45. There the Court held that a trial court's admission of portions of a non-testifying third party's plea allocution transcript to correct a "misleading impression" created by the defense attorney's opening statement violated the Confrontation Clause. *Id*. at 143–44. The Court explained that the Sixth Amendment "admits no exception for cases in which the trial judge believes unconfronted testimonial hearsay might reasonably be necessary to correct a misleading impression. Courts may not overlook its command, no matter how noble the motive." *Id.* at 154.

17

Cannon's Criminal Information on two occasions, amounted to ineffective assistance of counsel. *See Williams*, 2022 WL 1321128, at *13–16. We agree.

The test for ineffective assistance of counsel is a well-settled and firmly established one containing two components. "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Because *Strickland*'s test is "clearly established [f]ederal law," *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citation omitted), we consider whether the state court decision involved an unreasonable application of *Strickland* or an unreasonable determination of the facts. 28 U.S.C. § 2254(d).[7] We apply a doubly deferential standard of review to a *Strickland* claim, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), though whether "double deference" applies to prejudice as well as performance is an open question in our

---

[7] Pennsylvania employs a three-pronged test for ineffective assistance claims. *See Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). This test is not contrary to *Strickland. See Jacobs v. Horn*, 395 F.3d 92, 106 n.9 (3d Cir. 2005). "Thus, under § 2254(d)(1), the relevant question here is whether the [state court's] decision involved an unreasonable application of *Strickland*." *Id.*

18

Circuit. *See Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 477 n.4 (3d Cir. 2017). "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

A

An attorney's performance is deficient when it falls below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Here the PCRA court determined that Mr. Williams's ineffective assistance claim was without merit. First, the PCRA court explained that a motion in limine to redact the Criminal Information was not guaranteed to succeed. Next, it concluded that although the trial strategy was not successful, it did not amount to ineffective assistance where counsel "had a reasonable basis for referencing [Mr.] Canon's guilty plea *to the homicide*" as a third-party culpability defense. *Williams*, 2022 WL 1321128, at *13 (emphasis added). Finally, the PCRA court determined that Mr. Williams "failed to show that an alternative offered a substantially greater prospect of success." *Id.* We hold these determinations to reflect an unreasonable application of *Strickland* for the following reasons.

We first note that "strategic choices made as a result [of substantial investigations into plausible lines of defense] 'will seldom if ever' be found wanting." *Strickland*, 466 U.S. at 681. But defense counsel's strategic choice to pursue a third-party culpability defense is not the error here. Rather it was the execution of that strategy by knowingly, "patently misrepresent[ing] [Mr.] Cannon's guilty plea" to homicide in

19

his opening statement and then allowing the trial court, without objection, to read Mr. Cannon's Criminal Information in its entirety that was ineffective. *Williams*, 2022 WL 1321128 at *14.[8] Failure to raise a meritorious objection can constitute deficient performance, especially when the Commonwealth has not "provided any strategic explanation for trial counsel's failure" "[n]or are we able to identify one." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 382 (3d Cir. 2018); *see also Lambert v. Warden Green SCI*, 861 F.3d 459, 471 (3d Cir. 2017) ("We recognize that the right of confrontation and cross-examination is an essential and fundamental requirement of the kind of fair trial which is this country's constitutional goal. Thus[,] a good argument exists that [Mr.] Lambert presents a substantial claim that it would be objectively unreasonable for trial counsel to allow the Commonwealth to violate this right by failing to request a limiting instruction pursuant to *Richardson*." (citation and internal quotation marks omitted)).

To "cur[e]" the misrepresentation, however, defense counsel acquiesced to the trial court reading, not just the criminal homicide charge to which Mr. Cannon pleaded guilty, but the Criminal Information in its entirety, including nine counts naming Mr. Williams as a coconspirator. Supp. App'x 129. The reading of those nine counts clearly violated *Bruton*. And contrary to the PCRA court's conclusions, defense counsel likely would have prevailed had he objected to its reading, moved to confine the reading to just the first count, or sought

---

[8] We need not determine whether the initial misrepresentation constituted error as Mr. Williams concedes that he was not prejudiced by defense counsel's opening statement.

20

a redaction of any information identifying Mr. Williams. Yet we need not rule here on the adequacy of trial tactics that defense counsel failed to employ. The PCRA court's determination that a motion to restrict the language of the Criminal Information was not certain to succeed was a clear misapplication of federal law, and counsel's failure to object on two occasions to the reading of the Criminal Information was objectively unreasonable.

The PCRA court's decision also hinged on "an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d). It assumed the only charge that was read to the jury and that was material to the court's analysis is Count 1 of Mr. Cannon's Criminal Information. Indeed, we agree that reading only Count 1, which did not identify Mr. Williams, would have corrected the misrepresentation in defense counsel's opening statement. But reading the entire twenty-count Criminal Information, nine counts of which named Mr. Williams as a coconspirator, went far beyond clarifying for the jury that Mr. Cannon pleaded guilty to Criminal Homicide as a principal and/or accomplice.

To be clear, competent counsel need not be flawless and "may not be faulted for a *reasonable* miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110 (emphasis added). But Mr. Williams's defense counsel did not reasonably miscalculate the Commonwealth's prosecution strategy to introduce Mr. Cannon's Criminal Information. At the PCRA evidentiary hearing, he even admitted as much. *See* Supp. App'x 360–61 ("In retrospect, I should have tried to redact the information so to speak so as to have the homicide charge read

21

but not the conspiracy charge read because the conspiracy charge *obviously* implicates people other than Mr. Cannon." (emphasis added)). Instead, he had the opportunity to object to or ask for a redaction of that Criminal Information but chose not to. Moreover, the misrepresentation that the Commonwealth sought correction of was defense counsel's statement that Mr. Cannon "told Judge Kline, yes, I killed that man." Supp. App'x 121. That mischaracterization relates to the homicide charge and would have been cured by reading only Count 1 of Mr. Cannon's Criminal Information, which made no reference to Mr. Williams. For defense counsel to allow the other counts to be read without the opportunity to cross-examine Mr. Cannon about Mr. Williams's involvement in the shootings was objectively unreasonable.

For these reasons, we hold that Mr. Williams satisfied the deficiency prong of *Strickland* when his attorney failed to object, request redactions, or request limiting instructions to the trial court's reading of Mr. Cannon's entire Criminal Information to the jury.

## B

We next consider whether defense counsel's failure to object to the reading of the entire Criminal Information was "so serious as to deprive [Mr. Williams] of a fair trial." *Strickland*, 466 U.S. at 687. Such prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because a reasonable probability is one "sufficient to undermine confidence in the outcome," *id.*, the *Strickland* prejudice standard is not "stringent"—it is, in fact, "less demanding than the preponderance standard." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001) (citing *Baker*

22

*v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999)); *see also Woodford v. Visciotti*, 537 U.S. 19, 22 (2002) ("[*Strickland*] specifically rejected the proposition that [one] had to prove it more likely than not that the outcome would have been altered.").

The PCRA court concluded that Mr. Williams's claim lacked merit in part because "in light of the cumulative evidence presented at trial, including the living victim's identification of [Mr. Williams], [it found] that [he had] failed to show that an alternative offered a *substantially greater prospect for success*." Supp. App'x 88-89 (emphasis added). This language addresses prejudice because it refers to the weight and degree of other evidence in the record in comparison to evidence of Mr. Cannon's guilty plea. However, it incorrectly quotes the Pennsylvania standard for *performance*. *See id.* at 81 ("Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen *offered a potential for success substantially greater than the course actually pursued*." (emphasis added) (quoting *Commonwealth v. Spotz*, 84 A.3d 294, 312 (Pa. 2014))). Thus, it is unclear whether the PCRA court actually addressed prejudice under *Strickland* with respect to the Criminal Information.

If the PCRA Court did not address prejudice, our review of that issue would be de novo. *See, e.g.*, *Abdul-Salaam v. Sec'y Pa. Dep't of Corr.*, 895 F.3d 254, 269 (3d Cir. 2018) ("Because the Commonwealth courts did not reach the prejudice prong of the analysis, our review is *de novo*."). But assuming arguendo that it *did* address prejudice, our review is nonetheless de novo because the standard it used was contrary to clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 405–06

23

(2000) (declaring as contrary to *Strickland* a state court's rejection of an ineffective assistance claim "on the grounds that the prisoner had not established *by a preponderance* of the evidence that the result of his criminal proceeding would have been different" (emphasis added)); *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 464-65 (3d Cir. 2023) (holding as contrary to federal law the state court's requirement that petitioner show "the outcome would have been different"); *Hummel v. Rosemeyer*, 564 F.3d 290, 304-05 (3d Cir. 2009) (similar). By requiring Mr. Williams to show a "*substantially greater* prospect for success," the PCRA court demanded a higher standard than what *Strickland* requires, which is only "a *reasonable probability* that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. 694.[9]

Our de novo review of the prejudice prong reveals the following. *First*, in response to Mr. Williams's counsel's

---

[9] To be sure, Pennsylvania's "substantially greater prospect" standard is appropriate for performance, since we have repeatedly endorsed Pennsylvania's three-part IAC test as consistent with *Strickland* when properly applied. *See, e.g.*, *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) ("This Court has repeatedly recognized that Pennsylvania's test for ineffective assistance of counsel is consistent with the Supreme Court's decision in *Strickland* because it requires findings as to both deficient performance and actual prejudice." (internal quotation marks omitted)). However, *Strickland*'s prejudice prong is "easier to fulfill" than its performance prong and even "less demanding than the preponderance standard." *McKernan v. Superintendent Smithfield SCI*, 849 F.3d 557, 567 (3d Cir. 2017) (internal quotation marks omitted).

24

decisions, the Commonwealth in its closing argument encouraged the jury to draw the substantive inference that Mr. Williams was guilty of conspiracy based on Mr. Cannon's admission despite there being insufficient direct evidence of an actual agreement between Mr. Williams and Mr. Cannon to commit the homicide. *See Lambert*, 861 F.3d at 472 (finding *Bruton* error prejudicial where there was no direct evidence of an agreement between the accused and an alleged coconspirator and the prosecutor encouraged the jury to draw inference of guilt based on a coconspirator's statement); *Brown v. Superintendent Greene SCI*, 834 F.3d 506, 521 (3d Cir. 2016) (finding a *Bruton* violation prejudicial when "the unmasking of [Mr.] Lambert happened during a part of the closing arguments when the prosecutor was asking the jury to find [Mr.] Garcia guilty"); *see also Adamson v. Cathel*, 633 F.3d 248, 261 n.12 (3d Cir. 2011) (suggesting that use of a statement admitted in violation of *Bruton* "for their truth in order to establish [defendant's] guilt" is relevant to the harmless error determination).

*Second*, the jury note requesting that the Criminal Information be reread suggests that the jury was influenced by Mr. Cannon's plea during deliberations. *See Heath v. Jones*, 941 F.2d 1126, 1134 (11th Cir. 1991) ("Actual prejudice occurs when the prejudice actually enters the jury box and affects the jurors."). Making matters worse, the jury requested to rehear the Criminal Information shortly after commencing deliberations and reached a verdict after only a few additional hours of deliberation. *Cf. Johnson v. Superintendent Fayette SCI*, 949 F.3d 791, 805 (3d Cir. 2020) ("holding that the length of jury deliberations may be one consideration in assessing the strength of the prosecution's case").

25

*Third*, there are serious reliability concerns with much of the Commonwealth's trial evidence. The Commonwealth's primary witness, Mr. Crawford, was shot in the head and could testify only by typing "yes" or "no" into a cell phone. Not only does this raise serious concerns about Mr. Crawford's diminished capacity, his testimony itself was often equivocal. For example, he could not remember whether Ms. Harden was in or outside the apartment when he was shot. He also testified inconsistently regarding who shot Mr. Ortiz and who removed his watch and ring. His testimony was also inconsistent with the Commonwealth's own evidence: Mr. Crawford testified that Mr. Ortiz was shot first, but the Commonwealth's own forensic DNA analyst testified that Mr. Ortiz "was the last person shot" with the sole murder weapon. We also note that any evidence of motive from Ms. Harden's pretrial statements—to the effect that Mr. Williams planned to rob and kill Mr. Crawford—would be substantively inadmissible as to his guilt.

Thus, considering the *quality* and not just the quantity of the Commonwealth's evidence, the introduction and proliferation of Mr. Cannon's Criminal Information is much more likely to have had the prejudicial effect of "improperly corroborating the[] less-than-credible [evidence], making it more likely that the jury would set aside their doubts in favor of a conviction." *Id.* at 803-04 (finding prejudice where "the prosecution's two key witnesses were substantially impeached and their testimony was contradicted through other witness testimony" and thus the improperly admitted confession "gave significant weight to [the less than credible] testimony that [the accused] was the shooter and validated [a] dubious police statement"); *see Washington v. Sec'y Pa. Dep't of Corr.*, 801 F.3d 160, 171 (3d Cir. 2015) (improperly admitted confession

26

when "viewed in tandem" with coconspirator's "less-than-credible" statement had a "corroborative effect" that likely affected the jury's verdict, thus demonstrating actual prejudice); *see also Brown*, 834 F.3d at 520 (testimony from the Commonwealth's primary witness "undercut his reliability and usefulness" because "[b]y his own admission, he was impaired from marijuana and Xanax" and "had a powerful motive to implicate" the accused); *Adamson*, 633 F.3d at 261 (admission of improperly redacted/limited confession was not harmless because "[t]here were no eyewitness statements identifying [the accused] as taking part in the robbery, nor was there any physical evidence tying him to the robbery"); *Vazquez v. Wilson*, 550 F.3d 270, 282-83 (3d Cir. 2008) (*Bruton* error was not harmless because the accused "never confessed to being a shooter, and there was no witness at the trial who said that he saw [him] fire a weapon" and so "although there was evidence at trial incriminating [him] . . . , it was not so compelling that it overcame the *Bruton* error").

Cumulatively, these concerns lead us to believe that Mr. Williams has successfully shown that the reading of Mr. Cannon's entire and unredacted Criminal Information had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, satisfying *Strickland*'s prejudice prong.

V

The judgment of the District Court will therefore be affirmed, and the case will be remanded for the District Court to issue a writ of habeas corpus.