**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2601
_____

RONALD ROGERS,
Appellant

v.

SUPERINTENDENT GREENE SCI; DISTRICT
ATTORNEY PHILADELPHIA; ATTORNEY GENERAL
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-05663)
District Judge: Honorable Joel H. Slomsky
_____

Argued
June 20, 2023

Before: KRAUSE, BIBAS, and MATEY, *Circuit Judges*.

(Filed: September 7, 2023)
_____

Hayden Nelson-Major **[ARGUED]**
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

Katherine C. Thompson
Federal Community Defender Office for the Eastern District
of Pennsylvania
Capital Habeas Unit
601 Walnut Street
The Curtis Center, Suite 545 West
Philadelphia, PA 19106
        *Counsel for Appellant*

Shoshana D. Silverstein **[ARGUED]**
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
        *Counsel for Appellees*

David J. Park **[ARGUED]**
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
        *Court Appointed Amicus Curiae*

————————————

OPINION OF THE COURT
————————————

MATEY, *Circuit Judge*.

Three men joined in a shootout, but only one was convicted of murdering a bystander caught in their crossfire. A conviction obtained in violation of the Sixth Amendment, Ronald Rogers argues, because his attorney sat silently while his trial judge admonished a trial witness and offered no arguments when that witness changed his testimony. Inaction, Rogers says, that cannot square with the guarantee of effective attorney assistance. We agree and will reverse the District Court's order denying a writ of habeas corpus.

**I.**

Driving down a Philadelphia street, Demetrius Hayes saw Ronald Rogers, his acquaintance of ten years, standing on a corner. Hayes pulled over near the curb and "had words" with Rogers, an argument that resulted in both men drawing guns and shooting at each other. App. 38. A third man across the street joined the gunfight, firing at Hayes's vehicle as it sped away. By the time the dust settled, a bystander—Rogers's friend William Green—was dead, killed by a stray bullet from Rogers's gun.

Three witnesses told police officers what they saw. Myra Summers immediately found a nearby officer and explained the driver (Hayes) "pulled a gun and started shooting at the guy on the corner" (Rogers), who then "started shooting back at the car." App. 345. More than two years after the

3

shooting, Andre Holliday—a man purportedly standing on the street corner with Rogers—also told police that Hayes fired first, reaching across his passenger and friend Tyrone Singleton to shoot at Rogers, who "jump[ed] back, away from the car." App. 39. Rogers, Holliday said, then fired back at Hayes before the car drove off.

The final witness, Singleton, initially refused to cooperate with authorities. But he changed his mind and admitted he was at the scene, while denying that Hayes ever fired. Only after Hayes was arrested and charged in the shooting—almost three years after it occurred—did Singleton say that Hayes shot at Rogers. Still, Singleton defended his friend and said Rogers fired first, with Hayes returning fire only in self-defense.

Both Hayes and Rogers were charged with Green's murder, and each proceeded to trial separately. Hayes went first, and both Singleton and Summers were called as witnesses. Singleton's testimony matched his most recent statement to police, affirming that Rogers shot first and Hayes returned fire in self-defense. But Summers changed her story, now claiming she was looking down when she "heard pops," "look[ed] up," and saw Rogers and Hayes "shooting at each other." App. 74. Though Summers acknowledged that she told police "the person in the Mercedes shot first," Summers said at trial she "really d[idn't] remember" who did so. App. 74. Hayes was acquitted of all charges.

A week later, Summers and Singleton testified at Rogers's trial.[1] Consistent with her prior testimony, Summers said she was "look[ing] down" when the shooting began and

_____

[1] Holliday could not be located to testify at trial.

4

could not identify which man fired first. App. 215. Singleton's testimony, however, took an abrupt turn naming Hayes—not Rogers—as the first shooter. Without pointing out the reversal, the prosecutor briefly continued questioning Singleton before the trial judge ended proceedings early for the day. After excusing the jury, the judge admonished Singleton for his inconsistent testimony, saying he committed "[p]erjury on the record." App. 187. The judge warned Singleton that if he was "playing some little game here," the judge would ensure he "receive[d] a maximum consecutive sentence" for perjury. App. 187. Before dismissing Singleton, the judge advised him to "[d]o some long hard thinking" before resuming his testimony, because if he "sa[id] that [Hayes shot first] again, it is [p]erjury." App. 187. Rogers's counsel sat silent, raising no objections to the judge's reprimand.

The next day, the prosecutor led Singleton to testify that his claim that Hayes fired first was incorrect. Singleton explained he "made a mistake" the day before, chalking the error up to nervousness.[2] App. 190. Rogers's counsel again raised no objections. Nor did he cross-examine Singleton about the changed testimony. At the close of evidence, the trial judge instructed the jury on both self-defense and unreasonable belief voluntary manslaughter. Among other charges, Rogers was convicted of third-degree murder and sentenced to 16 to 32 years in prison.

---

[2] The prosecution later offered a different explanation for Singleton's about-face: the presence of "Rogers partisans" in the courtroom and Singleton's "desire not to be publicly perceived as actively assisting the prosecution at Rogers's trial." App. 682.

Rogers's convictions were affirmed on direct appeal, so he sought relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"). The PCRA court dismissed his petition, but the Superior Court remanded for an evidentiary hearing. Following the hearing, the PCRA court again denied relief and was affirmed on appeal. Rogers then petitioned for a writ of habeas corpus, lodging two claims of ineffective assistance of counsel: 1) failing to object to the trial judge's admonishment or cross-examine Singleton about his changed testimony, and 2) declining to seek a heat-of-passion voluntary manslaughter instruction. A Magistrate Judge recommended granting relief on Rogers's first claim, finding Rogers carried his burden under *Strickland v. Washington*. 466 U.S. 668 (1984). The District Judge disagreed and denied Rogers's petition, concluding the Superior Court's disposition "should not be disturbed." App. 32. Rogers appeals.[3]

## II.

The Supreme Court has explained the Constitution "envisions counsel[] playing a role that is critical to the ability

---

[3] The District Court had jurisdiction under 28 U.S.C. § 2254(a). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). Because the District Court did not conduct an evidentiary hearing, this Court exercises plenary review over its denial of Rogers's petition. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016) (en banc).

On appeal, Pennsylvania declines to defend Rogers's conviction, arguing the District Court's ruling on the first claim "was in error and should be reversed." Response Br. 2. This Court appointed counsel as amicus to defend the District Court's decision. We thank amicus for his able briefing and argument.

of the adversarial system to produce just results." *Strickland*, 466 U.S. at 685. A demand that assures every defendant "the guiding hand of counsel" with "the skill and knowledge adequate[] to prepare his defense." *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

When a state prisoner's representation falls below that standard, a federal court has the power to grant relief. 28 U.S.C. § 2254(a). But that authority is cabined by Congress, which "sets several limits on" our ability to consider petitions. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Among them, we must presume that the state court's factual findings were correct. 28 U.S.C. § 2254(e)(1). And we must defer to the state court's rulings for claims adjudicated on the merits unless they 1) were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," *id.* § 2254(d)(1), or 2) were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). In short, § 2254 imposes a standard that is "'difficult to meet.'" *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Rogers argues that habeas relief is warranted because his attorney was ineffective for failing to object to the trial judge's admonishment of Singleton and for failing to cross-examine Singleton after he changed his testimony.[4] To prevail,

---

[4] At the start, amicus says Rogers's habeas petition fails procedurally because he failed to provide his trial transcript to the Pennsylvania Superior Court for review. Not so. The Superior Court fully considered the merits of Rogers's appeal. And trial records were previously ordered and transcribed. Under Pennsylvania rules, "the clerk of the lower court must

7

Rogers must show that 1) his "counsel's representation fell below an objective standard of reasonableness" and 2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. Rogers must "make[] both showings" to prove his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. He succeeds, and for the reasons below, we will grant relief on this claim.

### A.    Deficient Performance

*Strickland*'s first prong demands proof that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A standard requiring "reasonably effective assistance." *Id.* We consult no checklist, as no catalog can "satisfactorily take [into] account . . . the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688–89. That is why our review of counsel's performance is "highly deferential," *United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005), for "it is all too easy for a court" to find a certain act or omission unreasonable after the defense ultimately proves unsuccessful, *Strickland*, 466 U.S. at 689; *see also Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006) ("[C]ounsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better.").

---

transmit 'the record on appeal, including the transcript and exhibits necessary for the determination of the appeal,' to the Superior Court." *Commonwealth v. Almodorar*, 20 A.3d 466, 467 (Pa. 2011) (per curiam) (quoting Pa. R.A.P. 1931(a)(1)).

1.      The Superior Court found counsel's performance reasonable. It credited counsel's testimony at the evidentiary hearing that "he had no basis for objecting to the admonishment because regardless of how Singleton testified, his testimony would not have been determinative because he lacked credibility." App. 609. And it acknowledged counsel's preferred strategy to rely on the more credible witness, Summers. Taken together, the Superior Court concluded "counsel had a reasonable basis" for failing to object to the trial judge's admonishment and for failing to cross-examine Singleton. App. 609. We disagree.

First, while counsel did not view the judge's comments as "outside the purview of her responsibility," App. 502, Pennsylvania courts have warned against such judicial conduct for decades. *See Commonwealth v. Laws*, 378 A.2d 812, 816 (Pa. 1977); *Commonwealth v. Fornicoia*, 650 A.2d 891, 893–94 (Pa. Super. Ct. 1994). Second, Rogers's counsel did not explain why continued reliance on Summers was appropriate given her equivocation at Hayes's trial one week prior on the pivotal question of who shot first. Indeed, counsel could not remember watching the testimony at Hayes's trial or reviewing the trial testimony later. *See Gov't of V.I. v. Vanterpool*, 767 F.3d 157, 168 (3d Cir. 2014) (stating the adversarial "testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies"). So the Superior Court unreasonably applied *Strickland* when it found counsel's performance adequate, having failed to properly "consider prevailing professional standards." *Medina v. Diguglielmo*, 461 F.3d 417, 429 (3d Cir. 2006). As a result, we afford its decision no deference.

9

2.     On de novo review, we conclude that counsel's performance was deficient. Counsel's failure to object to the trial judge's admonishment, conduct he "did not think" was problematic, App. 502, "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688. A conclusion supported by Pennsylvania decisions finding reversible error in similar situations. *See Laws*, 378 A.2d at 816, 818 (granting new trial when trial judge, after excusing jury, repeatedly questioned witness about his testimony and warned him of perjury); *Fornicoia*, 650 A.2d at 893, 895 (remanding for new trial after judge recessed the jury, told witness that continuing to testify the way he did may result in perjury charge, and warned that "[t]he last time someone committed perjury in my courtroom I gave them five to ten [years]").

Indeed, the Pennsylvania Supreme Court has proscribed questioning from the bench that "clearly convey[s] the impression that the trial court d[oes] not believe [a witness'] trial testimony" or puts "pressure [on] a witness to testify in a particular way." *Laws*, 378 A.2d at 816. Meaning Rogers's counsel maintained an unreasonable belief that the trial judge's threats against Singleton were permissible. *See Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (per curiam) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.").[5]

---

[5] We acknowledge that Rogers's counsel need not "have knowledge of all helpful laws in every situation." Amicus Br. 51. But counsel has a "duty to investigate" the applicable law when formulating his strategy, and counsel could have corrected his mistaken beliefs through basic

10

So too with counsel's later failure to cross-examine Singleton regarding his changed testimony. Counsel characterized Singleton as "a liar, trying to help his buddy out," App. 500, whose testimony would not be "determinative of the outcome of this case," App. 503. Not so. Singleton was the only witness to ever claim Rogers shot first—the ultimate issue in the case. And Singleton's pre-admonishment testimony to the contrary, which aligned with Summers's and Holliday's original eyewitness statements, would benefit the defense by casting doubt on Singleton's earlier implication of Rogers. *See Workman v. Superintendent Albion SCI*, 915 F.3d 928, 942 (3d Cir. 2019) (finding counsel's performance deficient when he, among other failures, neglected to "adapt his argument to the testimony in evidence").

The significance of Singleton's testimony increased when Summers—the only other eyewitness at trial—disclaimed seeing who shot first. A key retreat for which Rogers's counsel should have been prepared, given Summers's equivocation the week prior at Hayes's trial. *See Wiggins v. Smith*, 539 U.S. 510, 526 (2003) (finding counsel's conduct unreasonable for failing to investigate client's background due to "inattention, not reasoned strategic judgment"). Rather than gamble the defense on Summers, a reasonable defense attorney would, at the very least, cross-examine the prosecution's central witness regarding why he changed his initially favorable testimony. *See Berryman v. Morton*, 100 F.3d 1089, 1098–99 (3d Cir. 1996) (finding counsel's failure to cross-examine victim using inconsistent statements deficient when the reliability of the victim's identification "cut[] directly to the

---

research. *Gov't of V.I. v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).

heart of the only evidence against [defendant]"). Failing to do so was unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688.

## B.     Prejudice

We cannot set aside the judgment against Rogers without finding prejudice, "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.* at 687. Simply "show[ing] that the errors had some conceivable effect on the outcome of the proceeding" is not enough, as "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. So our constitutional standard demands "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In conducting that inquiry, we "consider the strength of the evidence" against Rogers, *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999), because a verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support," *Strickland*, 466 U.S. at 696.

The Superior Court found Rogers had not shown "that but for the act or omission in question, the outcome of the proceedings *would have* been different." App. 610 (emphasis added) (quoting *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007)). And in doing so, it found insufficient Rogers's argument that if the jury believed Singleton's pre-admonishment testimony, "there was a reasonable probability [of] a different outcome." App. 610. An argument, the court said, that "falls far short" of proving "that but for trial counsel's failure to object and place the [trial judge's] admonishment in front of the jury, the outcome would have been different." App. 610.

That decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The Superior Court held Rogers to a higher standard than what *Strickland* requires, which is only "a *reasonable probability* that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added). In applying an outcome determinative standard, the Superior Court imposed a burden "'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to [the Supreme Court's] clearly established precedent" in *Strickland*. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted) (declaring as contrary to *Strickland* a state court's rejection of a prisoner's ineffective assistance claim "on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different"). *See also Hummel v. Rosemeyer*, 564 F.3d 290, 304–05 (3d Cir. 2009) (holding as contrary to federal law the state court's "use of the more stringent requirement of 'show'" instead of the "reasonable probability" standard). So we accord the Superior Court's determination no deference.[6]

---

[6] Amicus concedes that, "[a]t first glance, [the] Superior Court appears to have contradicted *Strickland*'s reasonable-probability standard to assess prejudice." Amicus Br. 56. But he asks us to give "the Superior Court [the] benefit of the doubt" because it "adopted the PCRA court's decision and its factual findings," including the correct *Strickland* standard. Amicus Br. 56–57. We decline that invitation because the Superior Court quoted only the *evidence* on which the PCRA court relied, not the prejudice *standard* it applied. And the Superior Court was clear that it rejected Rogers's prejudice

Analyzing the prejudice claim de novo, we conclude that Rogers has carried his burden. Had Rogers's counsel objected to the trial judge's admonishment of Singleton and cross-examined Singleton about his changed testimony, "a reasonable probability" exists that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Had the jury learned of the admonishment, it might have concluded that the trial judge's threats of perjury persuaded Singleton to change course. A logical inference under the circumstances, considering that Hayes had been acquitted for the murder and Singleton admitted that his "initial purpose" in cooperating with authorities "was to help [Hayes], to make a statement for [Hayes]." App. 197. Or the jury might have discredited Singleton's testimony altogether, undermining a key part of the prosecution's case against Rogers. Either way, counsel's failures surrounding the admonishment are "sufficient to undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694.

And without Singleton's testimony against Rogers, the prosecution's remaining evidence was negligible. Contrary to the Superior Court's conclusion, no witnesses testified that Rogers "continued to fire" at Hayes's vehicle after it sped away. App. 610. In fact, Summers affirmed that when Hayes's "vehicle t[ook] off," "someone *on the other side of the street* started firing at" it. App. 215 (emphasis added). On that point, Singleton's testimony was not inconsistent. Like Summers, Singleton never claimed that Rogers fired at Hayes's vehicle after it fled, instead stating that he heard gunshots but "couldn't

argument for failing to meet its outcome determinative standard.

really tell" where they originated. App. 184 ("[L]ike I told you, we had our heads down, driving up the street, at a fast speed.").

Nor did ballistics undermine their accounts. The prosecution's expert testified that casings from Hayes's gun were discovered a "great [] distance" (25 feet) apart, signaling that Hayes kept firing his gun after he started driving away. App. 246. Casing patterns from Rogers's gun similarly suggested movement, but in Rogers's case, pointed to him backing *away* from Hayes's car as he fired. All of which accords with, or at least fails to contradict, Rogers's claim that he shot at Hayes only in self-defense.

As does the expert's analysis of the bullet that killed Green. During trial, the expert opined only that the bullet was deformed and had glass attached to it, indicating that the bullet passed through or struck a glass object. But the expert never specified the exact angle at which the bullet struck glass or which glass the bullet struck, whether on Hayes's vehicle or elsewhere. Nor did any other evidence show that Hayes's vehicle was struck from behind. Facts consistent, or at least not inconsistent, with Rogers's self-defense argument. All showing the verdict against Rogers was "only weakly supported by the record," *Strickland*, 466 U.S. at 696, such that we are persuaded "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.[7]

---

[7] Because we grant relief on this claim, we need not address Rogers's alternate argument about counsel's failure to request a heat-of-passion voluntary manslaughter instruction. *See Monachelli v. Warden, SCI Graterford*, 884 F.2d 749, 755 n.5 (3d Cir. 1989).

## III.

For these reasons, we will reverse the District Court's order denying habeas relief and remand the case for proceedings consistent with this opinion.