**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2511
_____

JOHN JUNIOR TAYLOR,

Appellant

v.

SUPERINTENDENT DALLAS SCI;
ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY DAUPHIN COUNTY
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cv-00910)
District Judge:  Honorable Jennifer P. Wilson
_____

Argued on May 7, 2024

Before: MATEY, MONTGOMERY-REEVES and ROTH, Circuit Judges

(Opinion filed: October 9, 2024)

Frederick W. Ulrich          **(Argued)**
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA 17101
         *Counsel for Appellant*

Thomas F. Burke
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103

Patrick A. Casey
Donna A. Walsh
Myers, Brier & Kelly
425 Biden Street
Suite 200
Scranton, PA 18503

       *Counsel for Amicus Appellant Pennsylvania Association of*
       *Criminal Defense Lawyers*


James P. Davy
All Rise Trial & Appellate
P.O. Box 15216
Philadelphia, PA 19125

       *Counsel for Amicus Appellants Pennsylvania Innocence Project &*
       *Innocence Network*


Ryan H. Lysaght       **(Argued)**
Dauphin County Office of District Attorney
101 Market Street
Harrisburg, PA 17101

       *Counsel for Appellees*

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge.

John Taylor appeals an order denying his habeas petition. He alleges that the attorney's representation of a government witness adversely affected Taylor's performance at trial, thereby violating his Sixth Amendment right to effective assistance of counsel under *Cuyler v. Sullivan*.[1] For the reasons that follow, we will affirm the District Court's order.

## I.     Factual Background

In December 2005, Taylor was arrested and charged with murder. In December 2006, while he was detained at the Dauphin County prison, he met Thomas Taylor (the informant), who began helping him with a bail motion. The informant introduced Taylor to Arthur Gutkin, an attorney with whom he had a longstanding professional and personal relationship.[2] Shortly thereafter, Taylor retained Gutkin to represent him at trial.[3]

Around the same time, the informant wrote a letter to the Dauphin County District Attorney's office, offering to be a "vital witness" in Taylor's case.[4] Harrisburg police interviewed the informant and took his formal statement on January 23, 2007. In his statement, the informant claimed that Taylor had confessed to the murder and that his motive was to seek revenge for a gang-related drug shooting.

---

[1] 446 U.S. 335 (1980).

[2] Gutkin represented the informant in a number of criminal matters, while the informant referred clients (like Taylor) to Gutkin and purportedly held himself out as Gutkin's paralegal. Gutkin denied ever employing the informant.

[3] Gutkin formally entered his appearance on January 30, 2007.

[4] Appx. 742.

Separately, on January 31, 2007, the informant was indicted in federal court on several counts of mail fraud and possession of firearms by a prohibited person. A few days later, the informant sent a second letter to the District Attorney's office, explaining that he had met with Gutkin to discuss the federal indictment and "the possibility of a conflict of interest" that could arise if Gutkin represented him and Taylor at the same time.[5] He wrote that Gutkin was "very scared about [him] taking the stand" at Taylor's trial and had "attempted to get [him] out of testifying[.]"[6] He noted, however, that "if Mr. Gutkin being my attorney presents a problem, we can eliminate him, and I can use my attorney of record . . . . Gutkin has never entered his appearance in my case, and this would remove the conflict of interest issue."[7] He also claimed that he had signed a waiver regarding the potential conflict of interest.[8] The District Attorney's office later agreed to notify federal authorities of the informant's cooperation in Taylor's case.[9]

Gutkin entered his appearance in the informant's federal case in mid-March 2007, and for the next two months, acted as counsel of record for both the informant and Taylor. During this period, Gutkin spoke frequently with the District Attorney assigned to Taylor's case, John Baer.[10] Baer later explained that Gutkin seemed to have an "out of the ordinary" fixation on the informant and "always wanted to steer the conversation

---

[5] Appx. 739.
[6] *Id*.
[7] *Id.*
[8] *Id*. Neither the waiver nor its contents are included in the record.
[9] It is unclear when Gutkin learned about this agreement.
[10] Taylor's case was originally assigned to another District Attorney (Francis Chardo), who reassigned it to Baer approximately two months before trial.

4

towards [the informant's] anticipated testimony."[11]  However, Baer made clear that Gutkin presented his issues with the informant as a "personality conflict" rather than a conflict of interest and never mentioned that he was actually representing the informant in another case.[12]

On May 10, 2007, just eleven days before the start of Taylor's trial, Gutkin moved to withdraw from the informant's case.  After noting that he was representing both the informant and Taylor, Gutkin explained his reasons for withdrawing as follows:

> Prior to this week I was informed that [the informant] was interviewed as a witness against John Taylor but probably would not be used as a Commonwealth witness. Yesterday, May 9, 2007, the Commonwealth informed me that [the informant] will be a witness in John Taylor's case. Additionally, the Commonwealth furnished to me the letters written by [the informant] wherein [he] stated that he would attempt to compromise my position in John Taylor's case in an effort to gain favor with the prosecution. [The informant] previously waived conflict and I consulted with disciplinary counsel as to my position in reference to the two [cases].  Counsel who specializes in ethics, Samuel Stretton, Esquire, informed me that I would be able to represent both [clients] with certain provisions.  As a result of learning that [the informant] would be a witness in John Taylor's case and the receipts of the [informant's] letters . . . I am respectfully requesting that I be allowed to withdraw from the above captioned action.[13]

The court granted Gutkin's motion to withdraw on May 14, 2007, and seven days later, Taylor's trial began.

On the first day of trial, Gutkin told the trial court judge that he was "in a situation where, in fact, [he] would cross-examine a Commonwealth witness who is a former

---

[11] Appx. 720.
[12] Appx. 719.
[13] Appx. 71–72 ¶¶ 4–8.

client" who he had represented as recently as "a few weeks ago."[14] Gutkin further explained that he had received Stretton's blessing and that the informant had "signed a waiver of conflict of interest statement."[15] However, Gutkin did not mention if Taylor had been apprised of the situation or had otherwise waived his rights.[16] Gutkin concluded by noting "it is going to come up that I was [the informant's] attorney. I have letters, many letters."[17] The judge responded: "It is fine with me if you handle it. Then I don't run into trouble, if you handle it," and did not ask Gutkin or Taylor any further questions.[18] According to Baer, Gutkin had another discussion with the judge in chambers or at sidebar, advising that Taylor "was okay with everything."[19]

At the outset of Gutkin's cross-examination of the informant, Gutkin acknowledged that he was "under ethical restraint" and could lose his license if he asked the informant about anything confidential.[20] He started the cross by questioning the informant about his many prior convictions for crimes of dishonesty and his predilection for gaining the confidences of other inmates, getting information about their cases, and then snitching (or making up stories) in order to get his charges dismissed or reduced. He

---

[14] Appx. 84.

[15] *Id.*

[16] Appx. 85.

[17] *Id.* Based on our review of the trial court transcript and the Superior Court's opinion, we infer that Gutkin was referring to the informant's letters to the District Attorney. *See Commonwealth v. Taylor*, No. 749 MDA 2016, 2017 WL 1952702, at *2 (Pa. Super. Ct. May 10, 2017) (PCRA opinion) (observing that "Gutkin questioned [the informant] regarding his assertions [] in one of the letters he sent to the district attorney's office").

[18] Appx. 85.

[19] Appx. 720 (Baer's PCRA evidentiary hearing testimony). This conversation is not otherwise reflected in the trial court record.

[20] Appx. 542.

went on to ask the informant about his letter to the District Attorney's office describing the meeting where Gutkin purportedly tried to dissuade the informant from testifying. This devolved into a debate between Gutkin and the informant about what actually happened at that meeting. He concluded his examination by questioning the informant about whether he had told other inmates that he was Gutkin's paralegal. Separately, he called four witnesses to impeach the informant.

The jury convicted Taylor of first-degree murder, and the trial court sentenced him to life in prison. Gutkin represented Taylor on direct appeal. The Pennsylvania Superior Court affirmed both the conviction and sentence, and the Pennsylvania Supreme Court denied Taylor's petition for allowance of appeal.

## II. Procedural History

In November 2012, Taylor sought relief under the Pennsylvania Post-Conviction Relief Act (PCRA), alleging that Gutkin had been ineffective because he was burdened by an actual conflict of interest.[21] At the ensuing evidentiary hearing, the Commonwealth called Baer to testify, while Taylor called the informant and testified on his own behalf. Neither side called Gutkin.[22]

---

[21] Taylor timely filed a pro se PCRA petition in November 2012, but his court-appointed attorney filed an amended version in August 2013.

[22] The same judge presided over both Taylor's criminal trial and the PCRA evidentiary hearing.

The PCRA court denied relief under *Cuyler*.[23] The court found that an actual conflict existed while Gutkin concurrently represented Taylor and the informant.[24] However, it further found that the "conflict was resolved" by Gutkin's withdrawal and the informant's waiver, and that the conflict had no adverse effect on Taylor's case because Gutkin "vigorously and zealously represent[ed]" him at trial.[25] Nonetheless, the court noted that it "smell[ed] something not quite right" and "was haunted that the stakes herein are much too high."[26] It concluded by "warily" dismissing Taylor's petition, but inviting the Superior Court to reverse its order if it was troubled by the lack of a colloquy with Taylor or to remand with instructions to take Gutkin's testimony.[27]

The Superior Court did neither. In affirming the PCRA court's order, the Superior Court reasoned that "by the time of Taylor's trial, any potential conflict of interest had been resolved because [] Gutkin had withdrawn from his representation" of the informant.[28] It then analyzed Taylor's claim under the ineffective assistance of counsel standard spelled out in *Commonwealth v. Johnson* (Pennsylvania's version of *Strickland v. Washington*).[29] It concluded that Taylor failed: (1) to show that Gutkin's "chosen

---

[23] *Taylor*, 2017 WL 1952702, at *4 (citing standard for an ineffective assistance of counsel claim premised on a conflict of interest set forth in *Cuyler*, 446 U.S. at 335).
[24] *Id.* at *9.
[25] *Id.*
[26] *Id.*
[27] *Id.* at *10.
[28] *Id.* at *3.
[29] *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016). The Pennsylvania ineffective assistance of counsel standard "recast[s] the two-part *Strickland* standard into a three-part test by dividing the performance element into two distinct components." *Id.* (discussing *Strickland v. Washington,* 466 U.S. 668 (1984)). Nonetheless, the Pennsylvania standard is substantively "identical" to the standard set forth in *Strickland*.

8

strategy for cross-examining [the informant] lacked a reasonable basis" or that an alternative strategy offered a substantially greater potential for success; and (2) to "demonstrate that there is a reasonable probability that the outcome of his trial would have been different but for [] Gutkin's action or inaction."[30] The Pennsylvania Supreme Court denied further review.

Taylor sought federal habeas relief under 28 U.S.C. § 2254, claiming he was denied effective assistance of counsel because Gutkin had labored under an "actual conflict of interest," notwithstanding his withdrawal from the informant's case.[31] The Magistrate Judge recommended denying relief. The District Court granted several of Taylor's objections to the Magistrate Judge's Report and Recommendation but ultimately dismissed the petition. Taylor appealed.

## III.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C §§ 1291 and 2253. Because the District Court did not conduct an evidentiary hearing and instead based its decision on a review of the state court record, we exercise plenary review over its order denying Taylor's petition and apply the same standard that the District Court applied.[32]

---

*Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

[30] *Taylor*, 2017 WL 1952702, at *3 (applying ineffective assistance of counsel standard set forth in *Johnson*, 139 A.3d at 1272).

[31] Taylor filed his petition pro se but filed a counseled reply to the answer to his petition.

[32] *See Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016); *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 461 n.3 (3d Cir. 2023) (citing *id.*).

9

In a habeas case involving a claim that has been adjudicated on the merits in state court, we review the last reasoned state judgment on the claim.[33] Here, we review the Superior Court's decision,[34] and must defer to that decision unless it was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35]

## IV. Governing Law

"The Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights": (1) "the right to adequate representation by an attorney of reasonable competence" and (2) "the right to the attorney's undivided loyalty free of conflict of interest."[36] These in turn give rise to two types of ineffective assistance of counsel (IAC) claims: *Strickland* and *Cuyler* claims.

To make out a *Strickland* claim, "a defendant must prove that the attorney's performance was unreasonable under prevailing professional standards and that this performance prejudiced the defense."[37] A defendant proves prejudice by showing "that

---

[33] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).
[34] *Taylor*, 2017 WL 1952702.
[35] 28 U.S.C. § 2254(d).
[36] *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988) (internal citation omitted).
[37] *Gambino*, 864 F.2d at 1069 (citing *Strickland*, 466 U.S. at 694).

10

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[38]

To make out a *Cuyler* claim, a defendant must establish the following: "(1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected [his attorney's] performance."[39] "Conflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties."[40] An *actual* conflict arises when an attorney's clients' interests "diverge with respect to a material factual or legal issue or to a course of action."[41] A *potential* conflict arises when their interests *could* diverge, but "may or may not burgeon into an actual conflict as the trial progresses."[42] Unlike a *Strickland* claim, prejudice is presumed for a *Cuyler* claim.[43] However, a defendant still must prove adverse effect—namely, that the actual conflict "cause[d] some lapse in representation contrary to [his] interest."[44] This lapse can result from what an attorney does or what he refrains from doing—for example, "[declining] to cross-examine a witness, failing to

---

[38] *Strickland*, 466 U.S. at 694.

[39] *United States v. Savage*, 85 F.4th 102, 117 (3d Cir. 2023) (quoting *Simon v. Gov't of V.I.*, 929 F.3d 118, 129 (3d Cir. 2019)).

[40] *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991).

[41] *Gambino*, 864 F.2d at 1070 (quoting *Cuyler*, 723 F.2d at 1086)).

[42] *Wheat v. United States*, 486 U.S. 153, 163 (1988).

[43] *See Strickland*, 466 U.S. at 692. If a defendant can only establish a *potential* conflict of interest, he can still bring a claim based on inadequate representation but "must then show prejudice." *United States v. Morelli*, 169 F.3d 798, 810 n.15 (3d Cir. 1999) (citing *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir. 1998)).

[44] *Gambino*, 864 F.2d at 1070 (quoting *Cuyler*, 723 F.2d at 1086).

respond to inadmissible evidence, or failing to 'diminish the jury's perception of a [co-conspirator's] guilt.'"[45]

## V. Discussion

Taylor argues that the Superior Court improperly assessed his claim under *Strickland* instead of *Cuyler*.[46] We start by noting that the Superior Court was implicitly guided by "the correct governing legal principle."[47] Given the court's conclusion that any conflict of interest was "resolved" by Gutkin's withdrawal from the informant's "unrelated" federal case, it properly analyzed Taylor's claim under *Strickland*. But even assuming an actual conflict persisted throughout Taylor's trial—and that the court should have therefore assessed his claim under *Cuyler*—we conclude that Taylor failed to establish adverse effect. We are therefore bound to affirm the District Court's order dismissing his habeas petition.

### A. An actual conflict of interest existed before Gutkin withdrew from the informant's case.

The months leading up to Taylor's trial—when Gutkin was concurrently representing Taylor and the informant—were unquestionably poisoned by an actual

---

[45] *Simon*, 929 F.3d at 129–130 (quoting *Cuyler*, 446 U.S. at 249).
[46] The Commonwealth argues that determining whether there is an "adverse effect" under *Cuyler* or prejudice under *Strickland* "call[s] for the same analysis and conclusion" because a conflict of interest cannot have adversely affected counsel's performance unless the result of the proceeding would have been different. Response Br. 9. Not so. The *Cuyler* standard is expressly intended to "place[] a lighter burden on the defendant than *Strickland*." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (internal citations omitted); *see also Hess*, 135 F.3d at 908 ("[A] different legal analysis governs whether an actual conflict of interest adversely affects legal representation[.]").
[47] *Dennis*, 834 F.3d at 280 (internal citation omitted).

12

conflict of interest. And although the informant signed a waiver, Taylor never did. To the contrary: Taylor testified, credibly, that he only learned about the pending federal case against the informant, Gutkin's representation of the informant in that case, and the informant's letters to the District Attorney *at the start of his trial*.[48] We are dubious that Gutkin gave Taylor all of the information he needed to knowingly and intelligently waive the conflict.[49]

It is less clear whether that conflict persisted after Gutkin withdrew from the informant's case.[50] The trial court record certainly raises serious concerns. On the first day of trial, Gutkin plainly stated that he was the informant's attorney as recently as "a

---

[48] The PCRA court specifically noted that it found Taylor's "uncontroverted testimony to be truthful and believable." *Taylor*, 2017 WL 1952702, at *4. It is unclear whether Gutkin ever advised *anyone* of the precise nature of the conflict. Baer, based on his pre-trial discussions with Gutkin, thought it was nothing more than "a personality conflict." Appx. 719.

[49] As the Supreme Court observed in *Wheat*, "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." 486 U.S. at 163.

[50] Taylor argues that "the subject matter of the dual representation overlapped" because the informant used information he got from Taylor "to reduce his sentencing exposure." Opening Br. 33. We disagree. To the extent courts consider whether the subject matter of one representation is "substantially and particularly related" to another in assessing "actual conflict," they focus on the factual and legal similarity of the cases. *Moss v. United States*, 323 F.3d 445, 462 (6th Cir. 2003) (representations "arose from the same facts"); *see also United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (holding "subject matter of the representations was nearly identical" where attorney represented testifying witnesses "in their own criminal cases, and the crimes to which they pled guilty in those cases were part of the same alleged conspiracy with which [defendant] was charged"). Taylor and the informant's cases were neither factually nor legally similar. Nor did the informant "use the information" he got from Taylor "to reduce his sentencing exposure"; rather, he used his cooperation in Taylor's case to lobby for leniency. Opening Br. 33.

13

few weeks ago," meaning while Taylor's case was well underway.[51] He also made clear

that his representation of the informant "[was] going to come up" at trial, and more

specifically, in the context of "letters, many letters."[52] While he made sure to note that

the informant had signed a conflict waiver, he said no such thing about Taylor.

Based on Gutkin's admissions, the trial court should have done more to investigate

the extent of that conflict than the record shows it did.[53] It admitted as much in its later

opinion dismissing Taylor's state habeas claim.[54] The trial court should have asked

Taylor—on the record—if he was aware of Gutkin's representation of the informant and

received his informed consent before proceeding.[55]

---

[51] Appx. 84.

[52] Appx. 85.

[53] *See Cuyler*, 446 U.S. at 346-47 ("Absent special circumstances . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist . . . . *Unless the trial court knows or reasonably should know that a particular conflict exists*, the court need not initiate an inquiry.") (emphases added).

[54] *See Taylor*, 2017 WL 1952702, at *8 ("Clearly, we could have easily made the record with a simple colloquy of the defendant. In hind sight, I would have.").

[55] *See Morris v. Beard*, 633 F.3d 185, 197 (3d Cir. 2011) ("[T]he absence of an on-the-record colloquy does not automatically preclude a valid waiver of a conflict of interest. Such a colloquy is the preferred course, however . . . ."); *United States v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978) ("Whether the waiver is knowing and intelligent 'should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.'" (quoting *Glasser v. United States*, 315 U.S. 60, 70 (1978))).

**B.** **Taylor failed to establish that the actual conflict adversely affected Gutkin's performance.**

However, even if we assume that an actual conflict existed after Gutkin withdrew from the informant's case, Taylor—who bears the burden of proof—failed to prove that it adversely affected Gutkin's performance.[56]

Taylor argues that Gutkin possessed confidential information about the informant that would have helped Taylor at trial but chose not to use it because of his ongoing duties to the informant. He further claims that those duties "hampered and inhibited important areas of inquiry" during cross-examination. Based on the record before us, we disagree. Although Gutkin acknowledged his "ethical restraint" before cross-examining the informant, Taylor fails to identify any helpful information Gutkin may have had but withheld for fear of breaching his duty to the informant, let alone how that information would have helped Taylor's defense.[57]

Nor do we believe that Gutkin's exchange with the informant about the letters to the District Attorney—and more specifically, the informant's claim that Gutkin told him

---

[56] According to Taylor, the trial court's failure to uphold its duties of inquiry allowed the conflict to persist throughout the course of the trial. Even if we credit Taylor's argument, he still must show adverse effect in order to establish a Sixth Amendment violation. *See Mickens v. Taylor*, 535 U.S.162, 172–73 (2002) (rejecting proposed rule of automatic reversal when (1) a trial judge neglects a duty to inquire into a potential conflict, even absent (2) a showing of adverse effect); *Shinn v. Ramirez,* 596 U.S. 366, 382 (2022) (explaining that a habeas applicant has "failed" to develop the factual basis of a claim in a state court proceeding under 28 U.S.C. § 2254(e)(2) if he "bears responsibility for the failure to develop the record").

[57] Taylor asserts that "it's precisely because the information is confidential that he could not identify it." Opening Br. 44. The record compels us to reach a different conclusion: he could not fully develop his claim because his attorney, for reasons unexplained, did not call Gutkin to testify at his PCRA evidentiary hearing.

15

not to testify at Taylor's trial—establishes adverse effect. Their exchange *could* have, as Taylor argues, left jurors with the impression that Gutkin tried to silence a prosecution witness. But even if jurors were left with such an impression, it would not have stemmed from a conflict of interest. Indeed, the trial transcript shows that Gutkin confirmed during cross-examination that the informant had waived attorney-client privilege so their conversations could be fully discussed before the jury.[58] Moreover, as the Superior Court found, the record shows that Gutkin vigorously questioned the informant about his past convictions for crimes of dishonesty and called several witnesses to impeach his credibility. Had any lingering conflict adversely affected Gutkin's performance, we would expect to see it manifest through evidence of his reticence to discredit a former client to whom he remained loyal.

Taylor may take issue with Gutkin's cross-examination strategy. However, "[o]ur review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried."[59] We must therefore deny his request for habeas relief.[60]

## VI. Conclusion

For the foregoing reasons, we will affirm the order of the District Court denying Taylor's habeas petition.

---

[58] *See* Appx. 552.
[59] *Hess*, 135 F.3d at 908.
[60] Taylor does not argue that his claim otherwise passes muster under *Strickland*, so our analysis begins and ends with *Cuyler*.

16

MONTGOMERY-REEVES, *Circuit Judge*, concurring.

"The Sixth Amendment provides that a criminal defendant shall have the right to 'the Assistance of Counsel for his defence [sic].' This right has been accorded, we have said, 'not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). This right attaches when the prosecution is commenced. *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008). "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens*, 535 U.S. at 166 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). But there are exceptions to the general rule. *See, e.g., id.* One such exception was established in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). There, the Supreme Court "held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, . . . [p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that

1

'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (citation omitted) (quoting *Cuyler*, 446 U.S. at 350 (footnote omitted)).

The PCRA court found that "an actual conflict, direct and immediately diametrically opposed, existed during the critical stages of legal representation." App. 761. The Majority agrees. I agree. And how could we not? Until the eve of trial, Gutkin simultaneously represented (1) Taylor in his first-degree murder proceedings and (2) the informant during negotiations of a plea deal that hinged, in part, on the informant's testimony against Taylor in the same first-degree murder proceeding. But at no point in this case has anyone analyzed whether this conflict had an adverse effect on Gutkin's performance *during the period when the conflict existed*.

The PCRA court noted, "during the time period in January through early May, Attorney Gutkin had his appearance entered for both the defendant herein as well as the federal defendant/state witness. . . . There is no doubt that both clients were well into the critical stages of both of their respective prosecutions. In fact, what haunts this Court is an eerie analogy to the musical 'Chicago,' where a conspiracy of such a heinous nature lurks in the shadows." App. 755. The PCRA court eventually concluded, based on Gutkin's performance at trial after resolution of the active conflict, "[t]hat conflict was resolved, without adverse action to the defendant, during the time that existed during the stages of legal representation of the actual conflict. The termination and waiver freed defense counsel to vigorously and zealously represent his client, which the record bears out." App. 761. But in reaching this conclusion, the PCRA court did not analyze whether Gutkin's performance from January through early May was adversely affected by the

2

conflict. And the Superior Court concluded, "based on our independent review of the record, we are compelled to agree with the PCRA court's determination that, by the time of Taylor's trial, any potential conflict of interest had been resolved because Attorney Gutkin had withdrawn from his representation in the unrelated federal court action pending against [the informant]." App. 770.

These conclusions do not bear the weight of scrutiny. Concluding that the conflict was resolved (a mere seven days before the trial began) does not equate to concluding that it was resolved *without adverse action to the defendant* when only Gutkin's actions *after* the dual representation was terminated have been scrutinized. Stated differently, everyone has been looking in the wrong place.[1] I am left to ask, what about any adverse effect of Gutkin's representation *during the conflict*? I am not aware of any binding authority that suggests that ending the dual representation negates any prior adverse effect such that a *Cuyler* claim is essentially mooted by ending the dual representation.

And there are myriad ways that Gutkin's performance as Taylor's lawyer could have "cause[d] some lapse in representation contrary to [Taylor's] interests," *Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir. 1983), before Taylor went to trial, especially considering Gutkin's conflict ended only seven days before jury selection began. There certainly does not appear to be any record evidence that Gutkin was able to, or did, advise Taylor about the informant's cooperation with the District Attorney's office or, at the very

---

[1] I can only suppose that Taylor's attorneys in the PCRA and Superior Court proceedings made similar arguments to those they made in front of us, which if true, may in part explain the reasoning of the Pennsylvania courts.

3

least, warn him to not continue sharing information with the informant because he was a jailhouse snitch. In fact, any possible conflict waiver by Taylor cannot hold water, because the first time Taylor heard about the letters from the informant or the informant's cooperation was at his trial. Instead, the informant passed information about Taylor's relationship with Gutkin to the District Attorney's office while Gutkin was representing both parties. Surely, this likely would have been avoided had Gutkin informed Taylor of the informant's dubious reputation. Moreover, an attorney unburdened by a conflict of loyalty very well may have made a different recommendation about entering a plea before trial based on the cooperating witness—something Gutkin would have been unable to do here because his attorney-client privilege with the informant would have prevented him from explaining the full reasoning of his recommendation to Taylor. The fact that the record before us is lacking enough evidence for Taylor to prevail is very likely due to the deficiencies in the creation of the record as opposed to a lack of such circumstances. And compounding the deficiencies of the factual record, the procedural record shows no evidence that anyone has considered the period where a conflict of interest unquestionably existed when analyzing whether Gutkin's performance was adversely affected by the conflict.

While I concur with my colleagues that Taylor has not met his burden of proof to show adverse effect based on the record developed in this case, I, like the PCRA court, am haunted by this case. I am haunted that the period when Gutkin "actively represented conflicting interests" has gone unchallenged, and therefore unreviewed, by multiple

4

counsel, in multiple proceedings, in multiple courts.  I can only hope that such a scenario is never repeated.